## CLEMENS *vs.* WALKER & BRICKELL.

[APPLICATION FOR REVOCATION OF LETTERS OF ADMINISTRATION.]

1. *When appeal lies.*—Under the act approved December 12, 1857, entitled "An act to regulate appeals from probate courts," (Session Acts,

1857–8, p. 244,) an appeal lies from an order or decree of the probate court, refusing and dismissing an application for the revocation of letters of administration.

2. *Administration de bonis non; presumption in favor of judgment.*—On application for the revocation of letters of administration, which are averred in the petition to be "letters of special administration," but which are nowhere set out in the record, the appellate court will presume, in order to sustain the ruling of the probate court, that they were letters of administration *de bonis non,* if the facts stated in the petition only authorized the grant of such letters.

3. *Administration pendente lite.*—If, after the death of a general administrator, who has not fully administered the estate, a contest should arise between persons claiming the right to administer, the probate court has power (Code, § 1676) to appoint an administrator *pendente lite;* but such special administration, *it seems,* should not continue longer than the necessity of the case requires, and should not be allowed to delay or injure the rights of creditors, legatees, or distributees; and if a contest should arise respecting the validity of the decedent's will, which has been admitted to probate, such administrator would not be a proper party to the litigation, but an administrator *de bonis non* should be appointed.

APPEAL from the Probate Court of Madison.

IN the matter of the estate of James Clemens, deceased, on the application of James L. Clemens for the revocation of letters of administration previously granted by said court to L. P. Walker and R. C. Brickell. The petition was filed on the 3d March, 1866, and was under oath. Its allegations were in the following words :

"1st, That James Clemens, who was at the time of his death an inhabitant of said county, died, testate, on the — day of ——, 1860 ; that his will was probated in said court, on the — day of ——, 1861; that the executors had (?) therein renounced the executorship thereof, and letters of administration with said will annexed on the estate of said testator were, on the — day of ——, 1861, granted to Benjamin Patterson, who gave bond, and qualified as such administrator in said court; that said Benjamin Patterson died on the — day of ——, 1863, without having made a final settlement of said estate ; and that since the death of said Benjamin Patterson, there has been a continued vacancy in the general administration of said estate.   2d, That on the 28th day of October, 1865, letters of special administration

on the estate of said testator were granted by said court to Leroy P. Walker and Robert C. Brickell. 3d, That said grant of letters of special administration by this court to said Walker & Brickell was improper, because general letters of administration with the will annexed on said estate had duly issued to said Benjamin Patterson previously. 4th, That said Leroy P. Walker and Robert C. Brickell were not suitable persons to be appointed administrators of said estate, because said Robert C. Brickell is one of the sureties of said Benjamin Patterson, on his bond for the administration of the estate of said testator, and also the administrator of the estate of Egbert J. Jones, deceased, who was another surety on the said bond; and there has been no settlement of said Patterson's administration of said testator's estate, and said Patterson's estate is believed to be insolvent; and also because said Robert C. Brickell is one of the sureties of George W. Drake, who was special administrator of said estate of said testator previous to said Patterson's appointment, on his bond for the special administration of the estate of said testator, and said Drake's special administration of said estate has never been settled. 5th, That more than two months have elapsed since the grant of letters of special administration to said Walker & Brickell, and they have failed to make and return to said court an inventory of the property of said estate. 6th, That said Walker & Brickell have rented the lands of said estate, and sold personal property thereof, more than sixty days since, and failed to report such renting and such sale to this court. 7th, That said Walker & Brickell have sought to prevent the vacancy in the general administration of the estate of said testator from being filled by the appointment of administrators *de bonis non*, with the will annexed, to the injury of the heirs-at-law, or legatees under the will, the debtors and creditors of the estate. 8th, That said Walker & Brickell have instituted no proceedings to effect a settlement of the administrations of said Drake and said Patterson. 9th, That said Walker & Brickell have committed other acts of maladministration of said estate. 10th, That said petitioner is an heir-at-law of said testator, being one of the children of Archibald M.

Clemens, who was a son of said testator, and died in his life-time, and also a legatee under said will of said testator."

The following "specifications" were afterwards added, "by leave of the court and consent of the parties," to the 9th allegation of the petition:

"1st, That on the 18th December, 1865, they rented the Millbrook plantation of said estate to your petitioner, at public outcry, for the sum of twenty-five hundred and twenty dollars, and refused to comply with their contract of renting to your petitioner, and rented the same to Major Goodfellow, for one hundred and twenty dollars less, without any default or acquiescence on the part of your petitioner. 2d, That said Robert C. Brickell refused to endorse your petitioner's statement of the facts to General Grierson, to whom he had applied for relief against said Goodfellow, excusing himself on the ground that one John D. Turner, who was interested with your petitioner in said renting, gave up the contract, and consented that the plantation should be rented; which statement of Robert C. Brickell was untrue. 3d, That Robert C. Brickell, in a conversation with F. P. Ward and others, spoke of the payment out of the estate of their fee for professional services in the probate proceedings that resulted in the probate of the will of said testator, now of probate, as one of the conditions (there being other contingencies) on which the special administrators would withdraw their opposition to having the estate committed to administration *de bonis non*, with the will annexed."

The defendants answered the petition, and incorporated in their answer a demurrer to the petition; assigning as grounds of demurrer, "that said petition shows no sufficient cause for their removal; and to the first, second, and third specifications of the 9th allegation, that no one of said specifications shows maladministration." The bill of exceptions, and the judgment-entry, each, states that "the defendants demurred to all the allegations of the plaintiff's petition, except those contained in paragraphs numbered 5 and 6, and the first specification under paragraph No. 9"; that "the plaintiff objected to the defendants being allowed to

demur to a part only of the petition"; that the court nevertheless heard and sustained the demurrer; and that the plaintiff excepted to this ruling and decision. The judgment-entry further states, that "the plaintiff then amended his petition, by striking out the allegations in paragraphs Nos. 5 and 6, and the issue as to maladministration on the first specification under allegations in paragraph No. 9 was submitted to the jury; and the jury having found their verdict in favor of the defendants, it is ordered, adjudged, and decreed by the court, that the application be now here refused and dismissed, and that the costs of this proceeding be taxed against the plaintiff, and that said petition and answers be recorded and filed."

"The final decree of the probate court, and the rulings to which exceptions were reserved," are now assigned as error.

A motion to dismiss the appeal was submitted on the part of the appellees.

GEO. W. STONE, with whom was J. W. SHEPHERD, for appellant.—1 The decision of the court in this case is a final decree, (Session Acts, 1857-8, p. 244,) and an appeal lies therefrom. Such an appeal has been entertained by this court in *Curtis v. Williams*, 33 Ala. 570, and in *Curtis v. Burt*, 34 Ala. 729.

2. The special administration for which the Code makes provision, is, under our statutes, one of such limited powers, that, in the absence of express legislative authority, we ought not to hold that such trust can be created after an estate has once passed into the hands of an adminstrator in chief.—Code, § 1677. Such special administrator can collect the goods and chattels of the estate, and *debts of the deceased*. This authorizes him to reduce to possession the goods and chattels which remain in specie; but he can not bring the administrator in chief, or his representative, to a settlement. He can collect debts of the *deceased*, but not debts created in the purchase of property belonging to the estate. He can thus possess himself of only a part of the property, and must leave the balance unrepresented, and uncared for. A special administrator, appointed before

the appointment of an administrator in chief, can perform fully and completely all the functions and duties which the law casts on him. He can not, in a majority of cases, perform half the functions which the law imposes on him, if he be appointed immediately after an administration in chief. The very great danger to which estates will be left exposed, if the rule be established that special administrators may be appointed after administration in chief, should incline the court against such rule, even if the statutes leave the question in doubt.

3. But the sections of the Code repel such construction. Section 1676 shows the purpose for which such special administrator is appointed; "the collection and preservation of the goods of the deceased, until letters testamentary or of administration have duly issued." In the present case, letters of administration "have duly issued" to Benjamin Patterson. The event has thus happened, which terminates the powers of the special administrator; and the event happened long before they were appointed. We have thus the anomaly of an administrator appointed, every one of whose functions had become impossible of performance long before his appointment.

Section 1677 of the Code means nothing, unless the special administrator has power to possess himself of all the assets of the estate. The very object of his appointment is the preservation of the estate. It is shown above, that if appointed after administration in chief, he can not possess himself of the whole assets of the estate. Section 1678 authorizes the special administrator to sell goods that are "perishable and wasting." Section 1679 shows that the powers of the special administrator cease, when letters testamentary or of administration issue. Section 1682, like all the other sections above commented on, and section 1694, all tend to show that special administration must always precede, and never can succeed, administration in chief. When it precedes, the duties cast on him may all be performed by him. When it comes after administration in chief, there will always be confusion, and an imperfect conservation of the assets.

4. The absence of all authorities, English and American,

authorizing such appointment, goes very far to show the authority does not exist. Let it be borne in mind, that in this case, there is a probated will, and not even proceedings set on foot to revoke the probate. The court had power to appoint an administrator *de bonis non*, and if no suitable person applied for the appointment, it was the duty of the court to commit the administration to the general administrator, or to the sheriff.—Code, §§ 1680–1.

5. In England, the rule seems to be, to have a receiver appointed by the chancery court, whenever, by subsequent litigation, the safe keeping of the assets may render such appointment necessary. The power of the court of chancery to graduate the relief, and to attemper the powers of the receiver to the wants of the particular case, is too manifest to render necessary any argument in favor of that practice, when compared with the course pursued by the probate court in this case. See 1 Lomax Executors, 305–6 ; 1 Wms. Ex. 409–10–11 ; *Jones v. Goodrich*, 10 Sim. 327 ; *Rutherford v. Douglas*, 1 Sim. & Stu. 111 ; *Ball v. Oliver*, 2 Ves. & B. 96. See, also, *Rendal v. Rendal*, 1 Harr. 152.

6. The elementary authors, and the adjudged cases, all tend to show that special administration precedes administration in chief.—See authorities collected in *Erwin v. Br· Bank*, 14 Ala. 310.

7. The case of *Slade v. Washburn*, (3 Ired. Law, 557,) is not opposed to our view. In that case, there was no will of record, or probated, at the time the administrator was appointed. True, there had been an imperfect compromise and an informal administration ; but the inference from the report of the case is, that nothing had been done under the administration. Speaking of the very will then propounded for probate, Judge Gaston said, " We must understand that the courts had revoked the previous probate of the supposed will, and that the paper which had been propounded as such remained before it, to be established or rejected according to the determination of that issue." There had, in fact, been no administration ; for under the agreement, Mrs. Priscilla Washburn was to remain in possession during her life, and then the property was to be divided in a particular way.

Judge Gaston cites no authority in support of his statement, that the appointment was void, and none can be found to support it. It is at war with the principles settled in *Bradley v. Broughton*, (34 Ala.,) and with the modern decisions generally. The English doctrine of a receiver has the qualification, that if there be a contest as to two wills, and one has been probated, the chancery court will not interfere, nor appoint a receiver, except for special reasons.—See *Rendal v. Rendal, supra.*

GOLDTHWAITE, RICE & SEMPLE, *contra.*—There is no such final judgment or decree in the case as will authorize an appeal; and there is no law which gives an appeal from a mere refusal to revoke special letters of administration, where no statutory disqualification or cause of removal is alleged and proved.—*Brennan v. Harris*, 20 Ala. 185; *White v. Shannon*, 3 Ala. 286; *Pratt v. Kittrell*, 4 Dev. 168; Sess. Acts, 1850, p. 33, § 29.

2. Every person is fit to be an administrator, unless disqualified by some one of the specified statutory causes. *Williams v. McConico*, 27 Ala. 572; *Walker v. Torrance*, 12 Geo. 106; *Brown v. Strickland*, 28 Geo. 387; *Torrance v. McDougald*, 12 Georgia, 526; *Percy v. De Wolfe*, 2 Rhode Island, 103.

3. Whenever there is no qualified executor or administrator, the probate court has jurisdiction to appoint a *special* administrator, in every case "in which it is necessary"; and it necessarily has jurisdiction to decide whether such necessity exists.—Code, § 1676; *Flora v. Mennice*, 12 Ala. 836; *Robinson v. Robinson*, 11 Ala.; *Brittain v. Kinnard*, 1 Brod. & Bing. 432; *Pratt v. Kittrell*, 4 Dev. 168; *Ikelheimer v. Chapman*, 32 Ala. 692; *Martin v. Mott*, 12 Wheaton, 19; 9 Cowen, 88; *Moseley v. Maslin*, 37 Ala. 216. But it has no jurisdiction to grant general letters, pending a contest as to the probate of the decedent's will.—*Slade v. Washburn*, 3 Ired. Law, 557; *Erwin v. Br. Bank*, 14 Ala. 310.

4. The question of the power of the court to appoint special administrators is not raised in this case. The petition does not aver that there was no necessity for such appointment. The order itself not being set out, it will be

Clemens v. Walker & Brickell.

presumed, in the absence of proof and averments to the contrary, to have been supported by the necessary facts.—Authorities above cited.

5. The appellant is precluded from saying that the grant of letters to the appellee is void, because his petition asks their removal, and the revocation of their letters.    There is a material difference between a grant of letters which is absolutely void, and one which is merely voidable.—*Hyman v. Gaskins*, 5 Ired. L. 267; *Springs v. Erwin*, 6 Ired. L. 27.

BYRD, J.—The appellees move to dismiss the appeal, on the ground that the law does not authorize an appeal in such proceeding, and from such an order, as this record shows.    The motion must be overruled, under the provisions of the act approved December 12th, 1857, (Pamph. Acts, p. 244,) and upon the authority of the cases of *Curtis v. Williams*, 33 Ala. 571, and *Curtis v. Burt*, 34 Ala. 729. These cases are almost identical with this one, as respects the question of appeal.    It is true, the question was not made in those cases; but, as this court took jurisdiction, they must be taken as conclusive as to the proper construction of the act of 1857.

2. This was a proceeding in the probate court, to revoke the letters of special administration granted by that court to appellees on the 28th day of October, 1865, for certain reasons set out in the petition filed and sworn to by appellant on the 2d day of April, 1866.    The appellees, in their answer to the petition, interposed a demurrer thereto; but, upon the trial, the appellees seem to have limited their demurrer to all the allegations of the petition, except those contained in paragraphs No. 5 and 6, and the first specification under allegations in paragraph 9.    The appellant objected to appellees being allowed to demur to only part of the petition; but the court overruled the objection, and the appellant excepted.—*Kirksey v. Fike*, 29 Ala. 206.    The court sustained the demurrer, and the appellant excepted; and this is the only remaining question raised by the bill of exceptions and the argument of counsel.    And the main question, and the only one of any merit, presented by the petition and demurrer, is, whether the probate court had

jurisdiction to grant special letters of administration to appellees, after the probate of the will of the testator, and grant of letters of administration with the will annexed, and the termination of the administration in chief by the death of the administrator.

The petition does not show what was the character or kind of special administration granted or conferred by the letters issued to appellees by the probate court; and in the absence of any averment, we are left to conjecture; and, in order to sustain the ruling of the court below, must presume that the court granted such an one as it was competent to grant. Bouvier says, administrators are *general* or *special: general* are of two kinds; "*first*, when the grant of administration is unlimited, and the administrator is required to administer the whole estate under the intestate laws; *secondly*, when the grant is made with the annexation of the will, which is the guide to the administrator to administer and distribute the estate." Special administrators are of two kinds: "*first*, when the administration is limited to part of the estate; as, for example, when the former administrator had died, leaving a part of the estate unadministered, an administrator is appointed to administer the remainder, and he is called the administrator *de bonis non*. He has all the powers of a common administrator. When an executor dies, leaving a part of the estate unadministered, the administrator appointed to complete the execution of the will is called an administrator *de bonis non cum testamento annexo*. *Secondly*, when the authority of the administrator is limited as to time;" as, administrators *durante minore ætate, durante absentia*, and *pendente lite*.

Upon the death of the general administrator, the court had the power to appoint a special administrator *de bonis non, cum testamento annexo;* and how are we to determine that the appellees are not so appointed, from the allegations of the petition? The words "special administration," used therein, do not negative the presumption that they were so appointed. They are altogether consistent therewith. The language of the 7th allegation does not clearly negative such a presumption. But, supposing it does, then what kind of "special administration" was granted appellees,

and for what reason was it granted? The petition does not affirm the existence of the facts which would have authorized the appointment of an administrator *pendente lite.* But the probate court being one of general jurisdiction, this court, on such a petition as this, will presume that the court below had sufficient proof to authorize it to grant special administration to the appellees.—1 Pet. Abr. 253; *Price v. Parker,* 1 Lev. 157; *Ikelheimer v. Chapman,* 32 Ala. 680; *Moseley's Adm'r v. Mastin,* 37 Ala. 216; *Sims v. Boynton,* 32 Ala. 553; *Bradley v. Broughton,* 34 Ala. 705.

3. If, after the death of a general administrator, who has not fully administered the estate, there should be a contest between persons claiming the right to administer upon the unadministered assets, the court has the power to appoint an administrator *pendente lite.*—*Walker v. Dougherty,* 14 Geo. 653; *Dean v. Biggers,* 27 Geo. 74; *Slade v. Washburn,* 3 Iredell's Law, 560; *Springs v. Erwin,* 6 Iredell's Law, 27; *Pratt v. Kittrell,* 4 Dev. Law. 171; *Ball v. Oliver,* 2 Ves. & Bea. 96; *Goods of John Morgan,* 9 Eng. Law & Eq. 581; *Jordan v. Polk,* 1 Sneed, 432; I Lomax Ex'rs, 305; *Watson v. Bothwell,* 11 Ala. 654; *Robinson v. Robinson,* 11 Ala. 952.

The case cited from 14 Geo. R. loses something of its weight, by the manner in which the learned court aids the "oversight of the counsel" and the bill of exceptions; yet, it decides upon a statute not clearer or more comprehensive than section 1676 of the Code, a question almost identical with the one involved in the decision of this cause, except that, in the Georgia case, the doctrine of presumptions is carried much farther then we are willing to go in order to aid a bill of exceptions or the ruling of the court below.

Section 1676 confers on the probate court the power, in certain cases, "*or in any other case in which it is necessary*", to appoint "a special administrator." This seems to be clear and explicit; and the cases cited from 11 Ala. R. very suggestively indicate that this power is sufficient to meet every contingency that may arise in the course of the administration of an estate, and so as to avoid the necessity of seeking the assistance of a court of chancery in many cases, where, heretofore, the probate court was inade-

quate, on account of its want of power to appoint a special administrator, to preserve and protect the estate from waste.

These special administrations, "limited as to time," should not continue a moment longer than the necessity exists which brought them into being; and the probate court should see to it, that they are not used to the delay and injury of creditors, to unnecessarily increase the costs of administration, or as impediments to legatees and distributees obtaining their just rights.

In this case, if the appellees are not administrators *de bonis non* with the will annexed, it would seem that it would be to the interest of the creditors of the estate, if any, and to the proper conducting of the litigation pending as to the validity of the will of James Clemens, deceased, now on record, and its probate, that there should be such appointed immediately. Administrators *pendente lite* are not proper parties to such litigation; and after the probate of a will, and its admission to record, it would seem more in conformity to principle that some one who represented the legal title conferred by the will to the property should be made a party to the litigation. These remarks are based upon the defense set up in the first paragraph of the answer of the appellee, and with a view to preparing the way to a termination of the protracted litigation which is involving this estate in heavy costs, and the legatees and distributees, if not also creditors, in an almost helpless pursuit of their just dues and rights.

In the case of *Slade v. Washburne, supra,* Judge Gaston, in delivering the opinion of the court, makes some very pertinent and forcible remarks, as to the difficulty courts have frequently to encounter, in the interpretation of the entries and records of these courts of probate, which exercise so important a jurisdiction in our country. The record neither shows that there was any necessity for such grant of letters of special administration, *limited as to time,* to appellees, nor that there was no necessity for such grant. The court had no power to make an appointment of a special administrator after the probate of a will and a grant of letters of administration with the will annexed, unless there

was some necessity shown therefor; and in some cases this necessity should be shown by the record, otherwise the grant *might* be voidable, if not void. But, however this may be, the petition in this case failing to set out the order of the appointment of appellees, we must presume that the record is unassailable.

The case of *Clemens v. Wilson*, from the circuit court of Madison county, was submitted with this case, and argued on the same brief by appellants' counsel; and some of the remarks of this opinion are more applicable to that case than this, and will shorten the opinion in that case; but the record in that cannot supply the defects of this, if any. Both cases arise from litigation in the administration of the estate of James Clemens, deceased. The case of *Walker v. Dougherty*, *supra*, might seem to warrant us in looking at both records, in such a case, to aid us in coming to a conclusion upon each case; but this we cannot do.

The judgment of the probate court must be affirmed.

NOTE BY REPORTER.—The appellant's counsel filed a petition for rehearing, and submitted with it the annexed brief; in response to which application, the following opinion was afterwards delivered.

GEO. W. STONE, and J. W. SHEPHERD, for the appellant. The assertion of Bouvier, that an administrator *de bonis non* is a special administrator, on the authority of which the opinion of the court is mainly rested, is supported by citing Bacon's Abr., Swinburn, Rolle's Abr., and 6 Sm. & Mar. These elementary writers simply state the principle as Bouvier states it. The case in 6 Sm. & Mar. merely decides, that the powers of an administrator *de bonis non* do not extend to the assets previously administered by the administrator in chief. The precise question was, whether an administrator *de bonis non* could recover from an administrator in chief, a balance found in his hands at the cessation of his authority. It was ruled that he could not. That was correct. The same rule obtained in this State, before our statute enlarged the powers of an administrator *de bonis non*, and authorized him to recover from his prede-

13

cessor the assets received by him, and not accounted for. Sess. Acts 1857–8, page 58.

Now, in what sense did Bouvier, and the other elementary authorities, employ the word *special?* Special, that is, *limited,* in this, there was one class of assets (those reduced or converted by the previous administrator) over which he had no control. His powers, being limited, could not be called general; limited, however, not in the character of his functions, or the nature of his powers over the assets, but as to the subjects over which his authority extended; a limit of area, not of prerogative. He had the same power and discretion *over,* and property *in* the *assets of the estate,* as his predecessor had. He could not preserve assets converted by the administrator in chief. These had ceased to be assets of the estate, by the *devastavit* of the administrator in chief. There is not one word in the Code, under the clauses which relate to special administrations, which does not show that such administrations are limited *as to the character of the powers* exercised; a limit of prerogative, not of area. What is meant by special, or limited administrations in this State, and under our statutes, is shown in the case of *Flora v. Mennice,* 12 Ala. 836.

In the order appointing Messrs. Walker & Brickell, the probate judge employs many of the *very words* which our statutes employ in defining the powers of a special administrator. Does this mean nothing? Can it be supposed that the probate court was guilty of the supreme absurdity of specifying certain conferred powers, when it was intended and understood that other and larger powers were thereby imparted? Why be so specific, when a general appointment of administrator of the goods and effects of testator, left unadministered by the administrator in chief, would not only have conformed to the usual rule, but would have been at once precise and brief?

But the practice has become general, if not universal, with good pleaders and clerks, of copying the language of the statute, whenever the aim is to pursue a statutory remedy. Such is the case in indictments, probate proceedings, and in all summary jurisdictions; and these quotations from the statute are the only evidence on which the court

acts, in determining under what statute the proceeding is had. The courts have always acted on such evidence, and, without the observance of such rule, the court must grope in uncertainty and doubt, whenever such proceedings come up. Now, when a case comes up which, by quotations, shows *the statute* under which the pleader is proceeding, is it safe to regard such quotations as surplusage, and hold that the proceeding is under a different statute, to which no reference whatever is made?

But, since the passage of the statute of 1857–8, referred to above, an administrator *de bonis non* is not properly a functionary of limited powers. It is his province and duty, not only to possess himself of all effects remaining in specie, but to bring his predecessor to a settlement, and recover from him, or his representative, all assets not previously disbursed in proper administration. How, then, can he be called a special administrator? Special as to what? What character of assets is there, to which the powers of an administrator *de bonis non*, under our present statutory law, do not extend?

BYRD, J.—The court have carefully considered the reasoning and conclusion of the opinion heretofore delivered in this cause, and the arguments presented in the brief of the learned counsel for the appellants; and we are satisfied to adhere to the conclusion announced in that opinion.

Let the decree of the probate court be affirmed, at the costs of the appellant.