# Brock's Administrator *v.* Frank.

*Statutory Real Action in Nature of Ejectment.*

1. *What law governs succession and testamentary disposition of property.* — At common law, the succession to the personal property of an intestate, or the validity of a testamentary disposition of it, was governed by the law of the owner's domicile at the time of his death; while that of real property was governed by the law of the place where it was situated.

2. *Probate of will; conclusiveness of.* — The probate of a will, whether of real or personal property, or of both, if decreed by a court of competent jurisdiction, is a judgment *in rem*, and, in the absence of statutory provisions, is conclusive on all the world, as to the capacity of the testator, and the due execution and validity of the will.

3. *Probate of foreign will.* — Under the statute of this State (Rev. Code, § 1949), if the testator was not domiciled here at the time of his death, and his will has been probated in another state or country, it may be admitted to probate here, on the production of a copy of the will and its probate, duly certified as required by the statute; but this statute, construed in connection with the former statute which it superseded, and with the general law which would prevail in the absence of all statutory provisions, does not authorize a contestation of the validity of such will, when offered for probate here.

4. *Executor's powers before probate.* — The rule of the common law, which allowed an executor, before probate of the will, to do nearly all the acts which he could rightfully do after probate, except the institution and prosecution of suits, is inconsistent with our statutory provisions, and does not prevail here.

5. *General grant of administration after probate of foreign will.* — A will having been admitted to probate in common form in South Carolina, where the testator was domiciled at the time of his death, and afterwards probated in solemn form, on an issue *devisavit vel non* between the executor and heirs; a general grant of letters of administration in Alabama, by the probate court of a county in which a certified copy of the will and its probate in common form had been filed and recorded, made after the probate in solemn form in South Carolina, but before its admission to record here, is not void, but is to be treated as a grant of administration with the will annexed.

6. *Sale of decedent's lands, by order of probate court, for division.* — Where the testator's will confers on his foreign executor power to sell his lands in this State for division among the legatees, and the will and its probate have been admitted to record here, the power of sale may be exercised by an administrator with the will annexed, appointed here (Rev. Code, § 1609); and in such case, the probate court has no jurisdiction to order a sale for division among the heirs.

APPEAL from the Circuit Court of Calhoun.

Tried before the Hon. WM. L. WHITLOCK.

This action was brought by William M. Hames, as the administrator with the will annexed of Lawrence Brock, deceased, against Isaac Frank; and was commenced on the 24th February, 1871. The defendant pleaded, "in short by consent, the general issue, with leave to give in evidence any matter that might be specially pleaded;" and the cause was tried on issue joined on that plea. The lands in controversy were certain town lots in Jacksonville in said county, which had belonged to said Lawrence Brock at the time of his death, and which the defendant held and claimed under a purchase at a sale made on the 23d March, 1863, by John Brock, as the administrator of said Lawrence Brock, under an order of the probate

court of said county. Lawrence Brock died in Greenville district, South Carolina, where he resided, in 1859, having executed his last will and testament, which was attested by three witnesses, and which contained, among other things, a clause authorizing his executor to sell all his lands in South Carolina, Georgia, and Alabama, and make titles to the same, the proceeds of sale to go to his residuary legatees. This will was "proved in common form," by the oath of one of the subscribing witnesses, in the court of ordinary of Greenville district, South Carolina, on the 22d day of April, 1859, and there recorded; and a copy of the will and this probate, duly certified as required by the statute, was filed and recorded in the probate court of Calhoun county, on the 8th day of June, 1859. On the 11th July, 1859, John Brock, who was a brother of said testator, filed in said probate court of Calhoun his petition asking the grant of special letters of administration to himself. The petition alleged the death of the testator in South Carolina, as above stated; that he left " considerable property, real and personal, in said county, unadministered, which requires the care of an administrator to prevent waste ;" that a paper " purporting to be the last will and testament of said Lawrence Brock, and to be probated in Greenville district, South Carolina," was filed in said probate court as above stated; that no person in Alabama had applied, " as legatee or otherwise under said will," to administer on said estate on Alabama, and that more than thirty days had elapsed since said paper had been thus filed and recorded. The petitioner further alleged, on information, that the testator's heirs had instituted, or were about to institute, before the proper court in South Carolina, legal proceedings to attack said will on the ground of fraud; and he declared that he did not intend, by his said petition, to admit the validity of said will. The probate court granted special letters of administration as prayed, under which said John Brock acted until February, 1862, when he made a final settlement, and resigned.

In South Carolina, in the mean time, the executor being required to prove the will in " solemn form, or due form of law," at the instance of said John Brock and others, who filed a *caveat* against its probate, an issue *devisavit vel non* was formed between them and the executor, which was tried before the court of ordinary of Greenville district, and decided in favor of the will; and on appeal to the court of common pleas, a trial *de novo* was had, and again decided in favor of the will, and it was admitted to probate in solemn form in July, 1860. A copy of these proceedings, duly authenticated, was filed in the probate court of Calhoun county, on the 10th of April, 1862, accompanied by a petition asking that the same might

[Brock's Administrator *v.* Frank.]

be admitted to probate as the last will and testament of said
Lawrence Brock; and the court thereupon appointed the 23d
day of May, 1862, for the hearing of the petition, and issued
notice to the heirs to appear, if they chose, and contest the
probate.   On the 23d May, 1862, a *caveat* against the probate
was filed by one of the heirs, and the application was there-
upon continued, from term to term, until the 9th March, 1863;
after which time no action was taken in the matter, until some
time in 1866 (the exact date not being shown in the record),
when the probate was allowed.   But in the mean time, on the
8th March, 1862, said probate court of Calhoun granted gen-
eral letters of administration on the estate of said testator to
John Brock; and on the 5th February, 1863, on his petition,
granted an order to sell the real estate, as in case of intestacy,
for the purpose of making distribution among the heirs.   The
sale was made as required by the order, the defendant becom-
ing the purchaser; and was reported to, and confirmed by the
court.   The purchase-money was paid in Confederate currency,
and the purchaser received a deed under the decree of the
court.

The above being all the evidence in the case, the court re-
fused to charge the jury, as requested by the plaintiff, " that
they must find for the plaintiff, if they believed the evidence;"
and instructed them, *ex mero motu,* that they must find for the
defendant, if they believed the evidence.   To the charge given,
and to the refusal of the charge asked, the plaintiff excepted,
and he now assigns them as error.

JNO. T. HEFLIN, for the appellant. — 1. The legal title to
the lands being in the plaintiff's testator at the time of his
death, the plaintiff was entitled to recover, unless the defend-
ant showed a better title.   *Golding* v. *Golding,* 24 Ala. 122.

2. Lawrence Brock being domiciled in South Carolina at the
time of his death, and his will being there admitted to probate,
by a court which had full jurisdiction of the subject, and that
probate being duly admitted to record in the probate court of
Calhoun county, Alabama, the grant of letters of administra-
tion by that court to John Brock was absolutely void.   Said
probate court had no jurisdiction over the estate, except under
the will, and everything done under said appointment was also
void.   Being void, the proceedings may be collaterally assailed.
1 Rolle's Abr. 919; 1 Comyn, 150; *Wyman* v. *Campbell,* 6
Porter, 219; *Mosely* v. *Tuthill,* 45 Ala. 642; *Starbuck* v.
*Murray,* 5 Wendell, 148.

3. The administrator, acting in a fiduciary character, had no
authority to receive Confederate currency.   *Shurer* v. *Greene,*
3 Coldw. 419; 1 Heiskell, Tenn. 150; *Eastern Bank* v. *Tay-*

[Brock's Administrator v. Frank.]

*lor*, 41 Ala. 93 ; *Chapman* v. *Cowles*, 41 Ala. 103 ; *Houston* v. *Deloach*, 43 Ala. 364 ; *Hill* v. *Erwin*, 44 Ala. 666.

ELLIS & CALDWELL, *contra.* — 1. The decedent having property in Calhoun county at the time of his death, and not being an inhabitant of this State, that court had jurisdiction to grant administration on his estate ; and though the grant be revocable and erroneous, it is not void for want of jurisdiction. *Broughton* v. *Bradley*, 34 Ala. 694, and numerous authorities there cited ; *Hazlett* v. *Ford*, 10 Watts, 101 ; *Miller* v. *Jones*, 26 Ala. 247.

2. The jurisdiction of the court to order the sale attached on the filing of the petition, alleging a statutory ground for a sale ; and the proceedings cannot be collaterally assailed, nor declared void on account of any subsequent irregularities. *King* v. *Kent*, 29 Ala. 542 ; *Field's Heirs* v. *Goldsby*, 28 Ala. 218 ; *Satcher* v. *Satcher*, 41 Ala. 26.

3. That the order of sale was granted by a rebel court, and the sale confirmed by that court, does not affect its validity in this case. *Martin* v. *Hewitt*, 44 Ala. 418 ; *Mosely* v. *Tuthill*, 45 Ala. 650.

BRICKELL, J. — It is well settled in the common law, that the laws of the domicile of the owner of personal property will govern in regard to the right of succession, whether he dies testate or intestate. In all that concerns the devise, descent, and heirship of real estate, the *lex rei sitœ* is absolute. Wharton's Conflict of Laws, § 561 ; Redfield on Wills, 394–98. The reasons of this distinction are differently stated by different jurists. Some affirm that it rests upon a legal fiction, by which all movables or all personal property are supposed to be in the place of the domicile of the owner. Others assert that personal property has not, in legal contemplation, a *situs*, but is attached to the person of the owner, wherever he is, and is governed by the laws governing his person ; that is, the law of his domicile. Others ascribe it to a presumption allowed to prevail, that each person expects his personal property to be transmitted by succession according to the system in which he has a domicile, and with which he is familiar. Judge STORY says the probability is, that the doctrine itself had not its origin in any distinction between real laws and personal laws, or in any fictitious annexation of them to the person of the owner, or in their incapacity to have a fixed *situs ;* but in an enlarged policy, growing out of their transitory nature, and the general convenience of nations. Story's Conflict of Laws, § 379. Whatever may be the reason, or may have been the origin of the doctrine, it is the settled law, subserving individual inter-

[Brock's Administrator v. Frank.]

ests, and promotive of social, commercial, and peaceful inter-
course between the citizens of different states. The *lex rei
sitæ* prevails in regard to the devise, descent, or heirship of
real estate, because it does not comport with the dignity, the
independence, or the security of any independent state or na-
tion, that these incidents should be affected in any manner by
the legislation or the decisions of the courts of any nation or
state beside itself. Redfield on Wills, 398.

2. The probate of a will, whether of personalty or of realty,
or of personalty and realty, when the court decreeing it has
jurisdiction, is a decree or judgment *in rem*, having all the force
and effect peculiar to such a judgment or decree. 2 Brick.
Dig. §§ 100, 531. The decree is not only evidence, but it is
conclusive and final. No other tribunal will reëxamine or per-
mit to be drawn in litigation the validity or invalidity of the
will. The reason is, as assigned by Judge STORY, that it being
the sentence or decree of a court of competent jurisdiction,
directly upon the very subject-matter in controversy, to which
all persons who have any interest are, or may make them-
selves parties, for the purpose of contesting the validity of the
will, it necessarily follows that it is conclusive between those
parties. For otherwise, there might be conflicting sentences
or adjudications upon the same subject-matter between the
same parties ; and thus the subject-matter be delivered over to
interminable doubts, and the effect of the rules of law, as to
*res adjudicata*, be completely overthrown. In short, such sen-
tences are treated as of the like nature as sentences or proceed-
ings *in rem*, necessarily conclusive upon the matter in contro-
versy, for the common safety and repose of mankind. *Tomp-
kins* v. *Tompkins*, 1 Story, 547.

In the absence of statutory provisions in regulation of the
subject, the sentence of probate in the proper tribunal of the
domicile of the testator is conclusive everywhere, as to the
capacity of the testator, the due execution and validity of the
will. In the language of the lord chancellor, "No other
court could go back upon the *factum*, and raise any question
upon the validity of the will." Redfield on Wills, 396-8 ;
Wharton's Conflict of Laws, § 645 ; *Williams* v. *Sanders*, 5
Cold. 60. Under the general law, an ancillary probate is
necessary to give effect to a foreign probate, when it is to
operate beyond the jurisdiction of the domicile of the testator.
When this ancillary probate is sought, no question arises except
as to the validity and authentication of the original probate.
If that was granted by a tribunal of competent jurisdiction,
and it is properly authenticated, the ancillary probate must be
allowed.

3. The statute of this State provides for the probate here of

[Brock's Administrator *v.* Frank.]

wills admitted to probate in any of the other states, or in any foreign country.   When the will has been admitted to probate in a sister state, such will or a copy of the same, and the probate thereof, certified by the clerk of the court in which the same has been proved, with the certificate of the judge (or one of the judges) of such court, that the attestation is genuine, and by the proper officer ; or, if the will has been proved before a court not having a clerk, or before an officer who is his own clerk, the certificate of the judge of such court or officer, stating such fact, filed in the proper court of probate of this State, and therein recorded, is admitted to probate in this State. R. C. § 1949.   When the will and probate is presented for probate here, the only inquiries the court of this State can make are, whether the foreign probate was granted by a court having jurisdiction, and whether the will and probate is properly authenticated.   Ascertaining these facts, the duty of the court then becomes ministerial, not judicial, and that duty is the record of the will and probate.   The law intervenes, and attaches to the probate not only the faith and credit it commanded within the jurisdiction pronouncing the sentence, but the value and dignity of a domestic decree of probate.   *Ward* v. *Oates*, 43 Ala. 515.

The general law would not permit any contestation here of the validity of the will.   The statute does not provide for or expressly prohibit such contestation ; but the general law, operating in the absence of a statutory prohibition, does forbid it. We are of opinion that the statute, when construed in the light of previous statutes which it superseded, must be deemed to withdraw from our courts of probate all jurisdiction of such contestation.   The statute of 1806 (Clay's Digest, 598, § 12) provided for the probate in this State of authenticated copies of wills, proved according to the laws of any of the United States, touching or concerning estates within this State, but declared, " such will shall be liable to be contested and controverted in the same manner as the original might have been." In *Varner* v. *Bevill* (17 Ala. 286), this statute was construed as enlarging the jurisdiction of our courts of probate, in so far as it provided for a contestation here of the will of a testator having his domicile abroad.   The Code, generally reënacting substantially preëxisting statutes, and its framers and the legislature adopting it having knowledge of the construction these statutes had received from the courts, omitted all provisions for the contestation here of a foreign will, though making express provision for its probate.   The just conclusion is, that it was not intended to confer on our courts of probate jurisdiction of such a controversy.   This conclusion is strengthened, if it needs fortifying, by the fact that no notice of the application

for probate of a foreign will is necessary. All the proceedings in the court of probate, for the contestation of the will of the testator in this case, are mere nullities, — could not have been introduced for any rightful purpose, and should never have been received or entertained by that court.

4. It appears from the record the testator had his domicile in South Carolina, and there made his will, with all the formalities, so executed and attested as to pass real estate according to the laws of Alabama. It further appears that in South Carolina modes of probate of a will analogous to those recognized at common law are observed, — probate in common form, and probate in solemn form of law. The executor having proved the testator's will in common form, a copy of the will and its probate, duly authenticated, was filed and recorded pursuant to the statute, in the court of probate of Calhoun county, in which county the testator had assets, real and personal. Subsequently, the executor not appearing to qualify within the time prescribed by the statute, and administration being necessary to preserve the assets from waste, a special administration under the statute (R. C. § 1994), answering to the administration *ad colligendum*, or administration *pendente lite*, was granted. Subsequently, the heirs and next of kin of the testator cited the executor in the proper forum in South Carolina to probate of the will in due (or solemn) form. An issue *devisavit vel non* was framed, and the will was admitted to probate in form of law. After the will had been admitted to probate in solemn form in South Carolina, the special administrator appointed in Calhoun county resigned, and made settlement of his accounts, and letters of general administration were granted to him by the court of probate. A question has been argued by counsel as to the character of this grant of administration; the one insisting it is void, the other that it is irregular and voidable only.

It seems to have been a rule of the common law, formerly, that if there be an executor, and administration be granted before probate and refusal, it shall be void on the subsequent probate of the will, although the will was suppressed, or its existence unknown, or it was dubious who was executor, or he was concealed, or abroad at the time of granting the administration. Toller on Executors, 120 ; 1 Williams on Executors, 518. The common law traced the title and authority of an executor to the will. Without regard to the time of its probate, his title and authority were by relation referred to the death of the testator. The executor was regarded, not as an officer of the court of probate, but rather as a private trustee, nominated and appointed by the testator, and charged with such duties as the testator declared. Probate was essential only to establish, by

judicial sentence, his right and authority. Before probate he could do nearly all the acts he could rightfully do after probate, except the institution and prosecution of suits, in which profert of probate and letters testamentary was necessary. The grant of administration before probate was in derogation of his right and title, of which he could not by judicial sentence be collaterally deprived. Therefore, Mr. Williams says: "It may, perhaps, be laid down as a general test whether an administration is void or voidable, that where the grant is in derogation of the right of an executor, it is void; but where the administration is granted by the proper jurisdiction, and is only in derogation of the right of the next of kin, or residuary legatee, it is merely voidable." 1 Williams on Executors, 520; *Griffith* v. *Frazier*, 8 Cranch, 9; *Kane* v. *Paul*, 14 Peters, 33.

I have not found any American authority recognizing this rule of the common law. It is believed to be inapplicable, generally, in this country. It certainly is, as was held at an early day in this court, inapplicable to this State. *Cleveland* v. *Chandler*, 3 Stew. 489. If the testator does not expressly relieve his executor, he must, before assuming to act as such, have given bond and security, payable as the law requires, conditioned for the faithful performance of his duties. If the testator relieves him from giving such bond, any person having any interest has the right of applying to the court granting probate, and on making affidavit of his interest, and that it is endangered for want of security; or if, in the opinion of the judge of probate, the estate is likely to be wasted, security can be demanded, and is a matter of right. It is not consistent with these statutory provisions to ascribe to the executor any power over the assets beyond that of a mere custodian, until probate, and the grant of letters testamentary; otherwise, all the beneficial purposes of the statutory requisition of bond and security could be defeated. When the will is proved, and letters testamentary are granted, the title of the executor is referred to the will, and has relation to the testator's death for all proper and legitimate purposes. As, prior to probate and the grant of letters testamentary, the estate of an executor does not under our law arise, a grant of administration, in the absence of the probate of a will, is not in derogation of the title of the executor, and is not void. Hence, the current of American authority is as stated by Judge REDFIELD in his work on Executors: "Thus, where an administrator is appointed, and it afterwards appears that a will exists, and an executor is named; or where probate of a will is made, and letters testamentary issue, and it subsequently comes to light that a later will exists, and a different executor is named; in all such cases, it may be good

ground for recalling the probate, or letters of administration.·
But, as the court had full jurisdiction both of the subject-
matter and of the particular cause, the appointment, while
it remained unrevoked, cannot be regarded as void; nor can
the recall or repeal of the appointment be fairly regarded
as placing the appointees of the court in the same position
as if the decrees had never existed.   On the contrary, all acts
done in the due course of administration, while such decrees
remained in force, must be held entirely valid."   Redfield
on Wills, 109; *Bigelow* v. *Bigelow*, 4 Ham. (Ohio) 138;
*Kittredge* v. *Folsom*, 8 N. H. 98; *Price* v. *Nesbit*, 1 Hill
(Ch.), 461; *Foster* v. *Brown*, 1 Bailey (Law), 221.   In ac-
cordance with this exposition of the common law is the stat-
ute (R. C. § 2045) declaring an administration as in case of
intestacy revocable, if a will is subsequently proved, and letters
testamentary claimed.

5. The authorities cited do not meet the precise question
this record presents; and it is insisted that, conceding they
state the law correctly, they are not applicable to this case, in
which the administration was granted after the probate of the
will, and while that probate was of full force, in the court
granting the administration; that they apply only when there
has not been probate; that when probate is taken, the ques-
tion of testacy or intestacy is finally and conclusively adju-
dicated, all jurisdiction of it is exhausted, and the grant of
general administration is therefore void.   While we feel the
force of this reasoning, and without `expressing any opinion
if the question were *res integra*, we are constrained, in obe-
dience to former decisions of this court, to pronounce the grant
of general administration voidable only.   The question was
directly presented in the case of *Broughton* v. *Bradley* (34
Ala. 694), and the grant declared voidable and revocable only.
That decision has stood for fifteen years.   It has been acqui-
esced in by the profession.   It may have become the founda-
tion of titles to property.   It is supported by a sound judicial
conservatism, that must ever hesitate, in a collateral proceed-
ing, to adjudge a sentence of nullity against a decree or judg-
ment of a tribunal which, by possibility, could have jurisdic-
tion of the subject-matter.   The decision was followed by this
court in the case of *Ward* v. *Oates* (42 Ala. 225), in which it
was held, that the intestacy of a decedent, upon whose estate
an administration with the will annexed was granted, would
render such administration revocable, not void, if the court had
jurisdiction of the grant of administration.   In *Jennings* v.
*Moses* (38 Ala. 402), a grant of administration as in case of
intestacy, where the decedent left a nuncupative will, which had
been duly admitted to probate, is not held void, but voida-

ble.   We are unwilling to depart from these decisions.   Consistently with them, the grant of general administration in this case can and must be deemed, in legal effect, a grant of administration with the will annexed, though not so expressed.   The form of letters testamentary, and of administration, is, under our statute, substantially the same.   The one authorizes the execution of the will; the other, the administration of the estate.   R. C. §§ 2007–8.   If there is a will of probate, there cannot be a legal administration of the estate without its execution ; and authority to administer is, of necessity, authority to execute the will.   The court could not, legally and properly, grant any other administration than one with the will annexed. In *Mosely* v. *Martin* (37 Ala. 216), there was a grant of administration, general in form, when an administration *de bonis non* only was proper.   This court held, the grant must be taken as a grant of administration *de bonis non*.   The cases of *Steene* v. *Bennett* (24 Verm. 303), *Grand* v. *Herera* (15 Texas, 533), cited in the opinion of the court, support its conclusion. In *Clemens* v. *Walker & Brickell* (40 Ala. 189), a grant of administration, expressed to be a "special administration," was held and declared an administration *de bonis non*, with the will annexed, that being the only character of administration properly grantable.   Pursuing these authorities, we hold the general grant of administration to John Brock to be a grant of administration with the will annexed.

6. The will expressly confers on the executor power to sell the testator's lands in this State, and directs among whom the proceeds of sale shall be distributed.   This power, under the statute, an administrator with the will annexed has authority, and is required to execute.   R. C. § 1609.   The will thus conferring power of sale, the court of probate had no jurisdiction to order a sale of the premises in controversy, for division among the heirs.   Such jurisdiction can only arise, when the testator dies intestate as to the lands, or when no power of sale is given by the will, and a division among the devisees is necessary.   In the language of this court, in the case of *Ala. Con. M. E. Church* v. *Price* (42 Ala. 49), " the direction in the will, that the land be sold, vests the authority to sell in the executor, and presents a contingency in which there is no authority in the probate court to sell for the purposes of the will. The order shows no want of authority under the will to sell for the payment of debts, and no necessity to sell for a division among the devisees."   *McCollum* v. *McCollum*, 33 Ala. 711. The order of sale being void — an excess of jurisdiction by the court of probate — no title passed to the purchaser, and it presents no obstacle to the plaintiff's recovery.   Consequently,

the circuit court erred in the refusal to charge as requested by the appellant, and in the charge given; and its judgment is reversed, and the cause remanded.

### *Statutory Real Action in Nature of Ejectment.*

