[Goodman v. Winter.]

# Goodman *v.* Winter; Winter *v.* Goodman.

*Ejectment by Devisees in Remainder, against Purchaser from Tenant for Life, with Confirmatory Decree in Chancery.*

1. *Devise to children as tenants in common; partition among them.*—A devise of all the testator's estate, after payment of his debts, to his children, to be divided equally among them by amicable partition; the sons taking an absolute estate, and the daughters an estate for life, with remainder to their children,—creates in them a tenancy in common, until the property is divided as directed by the will; on the death of one of the daughters before a division, her children, as remainder-men, become tenants in common with the survivors; and when the division is made, and recorded as prescribed by the will, the share of each vests in him or her in severalty, without any conveyance from the others.

2. *Probate of will; as essential to title of devisee.*—At common law, probate of the will was not necessary to perfect the title of a devisee, or to enable him to recover the land by action; but, where probate is required by statutory provisions, it is as indispensable, as matter of evidence, to the force and effect of a devise, as of a bequest of personal property.

3. *Conclusiveness of probate; domiciliary and ancillary.*—The sentence of probate in the proper tribunal of the testator's domicile is, in the absence of statutory provisions, conclusive everywhere, as to the capacity of the testator, and the due execution and validity of the will bequeathing personal property; and though ancillary probate may be necessary, to enable the will to operate in another jurisdiction, it will be granted as a matter of right, when the original probate is shown to have been granted by a court of competent jurisdiction, and it is properly authenticated.

4. *Probate under statutes of Alabama, prior to Code of 1852.*—Under the statutes of Alabama which were of force prior to the adoption of the Code of 1852 (Clay's Digest, 597-8), the Orphans' Court had exclusive jurisdiction of the probate of wills, and probate was equally necessary, whether the will disposed of real or personal property; and if not contested in chancery, within the time allowed by the statute, the probate was conclusive on all the world. Probate was also allowed of foreign wills, "touching or concerning estates in this State," whether probate had been granted in the testator's domicile or not; and if there granted, it might be contested here as the original might have been.

5. *What law governs testamentary dispositions and succession to intestates' estates.*—Whether a person dies testate or intestate, the law of his domicile governs the disposition of his personal property, or the succession to it; but, as to real estate, the title, descent, and disposition thereof, are governed entirely and exclusively by the laws of the country in which it is situated; hence, the probate of a foreign will, which does not conform to our statutory regulations, is inoperative to pass real estate in Alabama.

6. *Probate of foreign will; validity and conclusiveness of.*—When a foreign will is admitted to probate here, it is not essential to its validity, when collaterally assailed, that it shall affirmatively show that the will "touched or concerned estates in this State:" the probate is a sentence *in rem,* and conclusive of that fact, unless impeached and set aside in a direct proceeding.

7. *Title of devisee, and partition among tenants in common, before probate of will.*—The title of a devisee is derived from the will, and vests at the death of

Vol. LXIV.

[Goodman v. Winter.]

the testator, and the probate of the will has relation to that time; and where there is a devise to several as tenants in common, to be equally divided among them by private agreement, a division before the probate of the will vests the title of each to his part in severalty, though the subsequent probate is indispensable as evidence of his title under the will.

8. *Partition among devisees, described as heirs.*—When lands are divided, by voluntary agreement, as required by the will, among several devisees who take as tenants in common, the description of the parties as heirs, instead of devisees, does not affect the validity of the partition, or the title of each devisee in severalty to the portion allotted to him; and where some of the devisees take only estates for life, with remainder to their children, the share allotted to each tenant for life vests equally in the remainder-men.

9. *Presumption of partition from possession and lapse of time.*—Possession by a devisee and those claiming under him, for more than twenty years, of a portion of the land devised to him and others as tenants in common, with directions for an amicable division among them, is sufficient to raise the presumption of a valid partition, and the allotment of that portion to him in severalty.

10. *Jurisdiction defined.*—Jurisdiction is the power to hear and determine a cause : whenever such a case is presented by the plaintiff that, on demurrer, the court would render judgment in his favor, an undoubted case of jurisdiction is shown; and where the court has power to decide on the cause of action as presented, though the complaint or other pleading be defective and demurrable, jurisdiction is also shown. The line which separates jurisdiction and want of jurisdiction, is that which separates error of judgment from usurpation of power.

11. *Sale and conveyance in fee by tenant for life; equitable estoppel against remainder-men.*—When a tenant for life of lands sells and conveys in fee, in good faith believing he has power to do so, and the remainder-man accepts a portion of the purchase-money as compensation for his interest; or, if the proceeds of sale are invested by the tenant for life in other lands, taking the title to himself for life, with remainder as before, and the remainder-man accepts such conveyance with full knowledge of the facts; in either case, a court of equity will, at the instance of the purchaser, compel the remainder-man to convey to him, or bar him from asserting his legal estate in the lands so sold and conveyed.

12. *Sale of infant's lands; power of equity to decree.*—In this State, the Chancery Court, by virtue of its general jurisdiction over infants and their estates, has power to decree the sale of an infant's lands, whether held under a deed or will, having regard to the necessities and interest of the infant; and this jurisdiction extends to contingent estates, or estates held in remainder, though it may be more sparingly exercised.

13. *Election by or for infant, and equitable estoppel.*—An infant can not make an election, and can not create an estoppel against himself; but a court of equity has undoubted power to elect for him, and will not allow him to receive and hold the proceeds of an unauthorized sale of his property, and at the same time repudiate the sale : equitable estoppels, of this character, apply to infants as well as adults.

14. *What title will support ejectment.*—To support ejectment, the plaintiff must have title at the commencement of the suit, and a title subsequently accruing will not authorize a recovery ; hence, if he is enjoined and debarred from asserting his title, by a decree in chancery of binding force at the commencement of the suit, and that decree is set aside, on bill of review, pending the suit, he can not recover.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Georgia Goodman, Lydia H. Pope and her husband, Ruth A. Sayre and her husband, and Eliza M. Richardson and her husband, against John G. Win-

ter, as tenant in possession, Mrs. Mary E. Winter intervening as landlord, to recover the possession of a lot, or tract of land, in the city of Montgomery ; and was commenced on the 3d December, 1869.   The first count in the declaration was on the demise of all the persons above named, and the last on the demise of Georgia Goodman alone.   The defendant pleaded not guilty, accompanied with a suggestion of the erection of valuable improvements under adverse holding for more than three years.   Under the rulings of the court on the trial, there was a verdict and judgment for the plaintiff, on the demise of Georgia Goodman alone, for an undivided one-fifth part of the premises ; the value of the land was assessed at $5,000 ; and the value of the permanent improvements erected by the defendant at $10,000, being $6,700 for improvements erected before the commencement of the suit, and $3,300 erected pending the suit.   Each party reserved a bill of exceptions to the rulings of the court on the trial, and each sued out an appeal, and assigned errors in this court. The two appeals were argued and submitted together.

The land sued for was a part of the north-east quarter of section thirteen (13), township sixteen (16), range seventeen (17), and belonged to George R. Clayton at the time of his death, which occurred in October, 1840, in Baldwin county, Georgia, where he resided.   The plaintiffs were the grand children of said Clayton, being the children of his daughter, Mildred A. Holcombe, the wife of George G. Holcombe ; except Georgia Goodman, whose mother, of the same name, was a daughter of said Mildred, and died before the commencement of this suit.   They claimed the land under a devise by said Clayton to his daughter Mildred for life, with remainder to her children ; while the defendant held and claimed under an absolute deed from Mrs. Holcombe and her said husband, and a decree rendered by the Chancery Court at Mobile, ratifying and approving that conveyance, and debarring Mrs. Holcombe's children from asserting any title to the land, as hereinafter more particularly stated.

The will of said Clayton was executed in Georgia, was dated the 15th October, 1840, and was attested by three witnesses.   After directing the payment of his debts, the testator made the following disposition of his property :   "I wish my children to share my property, real and personal, equally ; subject, however, to such advancements, or loans of money, or payments of money, made for such child, other than money expended in the maintenance, education, and support of such child.   Let my children assemble together, and ascertain in an amicable spirit what advancements may have been made by me to each one ; after which, let the

[Goodman v. Winter.]

property be divided into shares, allowing for such advancements, and specifying the property making up each share or lot, so that it may be identified by name or description. Whenever it shall have been divided amongst themselves equitably and justly, let a written memorandum of such division be made, and returned to the Superior Court of the county of Baldwin, and there recorded for reference. My minor children may, on such division, be represented by some discreet friend or relative, of their own selection. Whenever the parts or shares of my children shall have been set off, allotted, or ascertained, upon division as before directed, it is my will and desire that my daughters, Caroline, Mildred, and Amanda, have each a life-estate in the respective shares falling to them, and the remainder to their children respectively, upon the determination of such life-estate. It is my will, moreover, that such several life-estates as are hereby given shall in no event be subject to any debt or contract of their respective husbands, or capable of being alienated by their husbands, or in any other manner than by a decree of a court of equity; and then, for the necessary support and maintenance of my daughters, or either of them." He then appointed his seven children as his executors, giving a majority of them "full power to do all necessary acts to carry this will into complete effect," and desiring the husbands of the three daughters "to assist their respective wives in the performance of the duties and trusts reposed;" and added: "Finally, I enjoin it most solemnly upon all of my children and my sons-in-law, that the distribution of my property, as hereinbefore directed, be made harmoniously and equitably, as specified; and that the settlements of the lots or shares of my daughters upon them during their respective lives, then to their children, be carried out in good faith, that my parental love and care for them be not thwarted."

This will was admitted to probate, in the Court of Ordinary of Baldwin county, Georgia, on the 30th October, 1840, on proof by the subscribing witnesses; and letters testamentary were, on the same day, granted to the testator's seven children by said court. A copy of said will was also recorded in the Orphans' Court of Montgomery county, Alabama, together with its probate in Georgia, on the certificate of the deputy-clerk of the Court of Ordinary of Baldwin county, Georgia; the only entry in reference to it, made by the probate judge of Montgomery, being in these words: "George R. Clayton's last will and testament, received for record 15 June, 1841." On the 3d November, 1846, at a special term of the Orphans' Court of Montgomery, "an authenticated copy" of the will, as it is termed, was probated and admitted to record, as

shown by an entry in these words : "This day came Joseph
W. Wilson and Amanda, his wife, and offered for probate an
authenticated copy of the last will and testament of George
R. Clayton, deceased; and it appearing to the court that said
George R. Clayton died in the State of Georgia; and it fur-
ther appearing that the copy of the [will] presented has been
probated in the Court of Ordinary of Baldwin county, in said
State of Georgia, and that the copy presented to this court
has been authenticated, according to the act of Congress in
such cases made and provided; and the court having heard
the testimony of W. C. Powell, one of the subscribing wit-
nesses to the said will (it appearing by proof that Iverson L.
Harris, another subscribing witness, is not a resident of this
State, and that Thomas Foard, another subscribing witness,
has departed this life); and the court being satisfied that said
George R. Clayton was of sound and disposing mind, and
that he did execute said last will and testament, in the pre-
sence of said witnesses, and that they subscribed their names
as witnesses in his presence, and of each other; it is there-
fore considered and decreed, that said copy of said will,
authenticated as aforesaid, be probated and recorded. Or-
dered, that the written testimony taken in this case be filed
in this office."

In April, 1843, the lands situated in Montgomery county,
Alabama, were surveyed, and laid off into seven lots, by
Reuben Emmerson, county surveyor, at the instance of the
several children and devisees, and a valuation placed upon
each lot by two disinterested persons; and the several lots
were assigned by lottery to the several parties in interest.
This survey and plat were made at the instance of P. D.
Sayre and J. W. Wilson, the husbands of two of the testa-
tor's daughters, who acted under written authority from P.
A. Clayton, one of the executors, as follows: "P. D. Sayre
and J. W. Wilson *is* hereby authorized to have the land be-
longing to the estate of George R. Clayton, deceased, adjoin-
ing the city of Montgomery, Alabama, laid off into seven
equal lots, numbered from one (1) to seven (7), and to sell
them in such manner as will make the land bring $3,500.
Any of the heirs of said estate is authorized to take either
of the lots, at such price as may be hereafter agreed on, val-
uing the whole at the above price, $3,500, at this time";
which was signed, "*P. A. Clayton, for the executors.*" The
division, as made by lot, was signed by all the parties in in-
terest, P. D. Sayre acting as guardian for P. H. Clayton, who
was a minor; and it was recorded in the office of the "county
clerk" of Montgomery county, Alabama, and in the Court of
Ordinary of Baldwin county, Georgia, accompanied with the

certificate of James H. R. Washington, who conducted the
drawing, and certified to its correctness.   On this division, lot
No. 7, which contained the land here sued for, was assigned
to Mrs. Mildred Holcombe, and she went into possession of
it immediately, as also the other parties took possession of
their respective portions.   On the 1st September, 1851, Mrs.
Holcombe and her husband, George G. Holcombe, sold and
conveyed the land, of which she had continued in the uninter-
rupted possession, to Joseph S. Winter, in consideration of
$1,000 cash in hand paid ; the deed purporting to convey the
absolute title, and containing full covenants of warranty.
Possession was delivered under this deed, and Winter after-
wards conveyed, by deed with warranty, to a trustee for his
wife, Mrs. Mary E. Winter, the defendant in this suit, who
continued in possession from 1859 to the commencement of
the suit.

On the 13th August, 1858, Winter filed his bill in the
Chancery Court at Mobile, against said George G. Hol-
combe, his wife, and their children then living, with the hus-
bands of those who were then married ; alleging the sale and
conveyance of the land to him by said Holcombe and wife,
as above stated, and their investment of the purchase-money
received in the purchase of a house and lot in Mobile, in
which they resided with their children ; alleging, also, that
said Holcombe and wife represented to him that they could
convey a good title to the land, as they attempted to do by
their deed, and he made the purchase on the faith of their
representations, not having then seen a copy of Clayton's
will, which conveyed to Mrs. Holcombe only an estate for
life, with remainder to her children ; that Holcombe and his
wife were unable to respond in damages for the breach of the
covenants contained in their deed ; and that the property
bought in Mobile was more valuable than the land in Mont-
gomery.   The prayer of the bill was, that the children's re-
mainder in the land be cut off, and the defendant be quieted
in his possession and title ; that the property in Mobile be
taken and received by them in full satisfaction of their inter-
est in the Montgomery lands ; or, that the property in Mobile
be charged as security for the breach of the covenants in the
deed of Holcombe and wife; or, that the contract be rescinded,
and they be required to refund the purchase-money, with in-
terest.   Mrs. Georgia Goodman, one of the defendants to the
bill, died before process was served on her; and a bill of
revivor was afterwards filed to bring in her infant daughter,
Georgia Goodman, one of the plaintiffs in this suit, as a de-
fendant.   Decrees *pro confesso* were entered against the adult
defendants, and a formal answer was filed by the guardian *ad*

*litem* of the infants. The complainant took the depositions of said Holcombe and his wife, who admitted the facts as stated in the bill.

On final hearing, on pleadings and proof, on the 10th February, 1860, the chancellor rendered a decree for the complainant, and ordered a reference to the register, to ascertain and report whether it would be to the interest of the infants that the sale should be confirmed. The register having reported that "it would clearly be to the interest of the minor defendants to have the change of investment, referred to in the pleadings, ratified and confirmed," the report was confirmed without objection; and on the 14th February, 1860, the chancellor rendered a final decree in the cause, as follows: "It is decreed, that the children of the defendant, Mildred Holcombe, be forever barred and enjoined from asserting any title to the remainder, after the death of the said Mildred, in the land in Montgomery described in the pleadings, and which was sold to the complainant by said Geo. G. Holcombe and wife. It is further decreed, that the lot in Mobile, purchased of James Battle and wife, be vested in said Mildred Holcombe and her children, in the manner contemplated by the deed from said Battle and wife; and the change of property intended to be made by said Holcombe and wife, in selling the lot in Montgomery, and purchasing the lot in Mobile, is hereby ratified and confirmed."

The deed of Battle and wife, referred to in this decree, was made an exhibit to the bill, and conveyed the property described to J. H. Pope, as trustee, "in trust, however, and for the sole and separate use, benefit and enjoyment of the said Mildred A. Holcombe, during her natural life, and after her death for the use and benefit of the children of the said Mildred and her present husband, George G. Holcombe, living at the time of her death"; and it gave the trustee and Mrs. Holcombe power to sell and convey the property, re-investing the purchase-money in other property to be held on the same trusts. On the 17th April, 1871, after the commencement of this suit, Georgia Goodman filed a bill of review in the cause, specifying numerous errors and irregularities in the decree and proceedings, and asking that the same be set aside and annulled so far as it affected her rights and interests. The other remainder-men, who were made defendants to the bill of review, admitted all its allegations, and asked that the decree be set aside as to them also. Winter demurred to the bill, and specified numerous causes of demurrer. The chancellor overruled his demurrer, and decreed, at the November term, 1872, "that the said decree of this court rendered on the 14th day of February, 1860, in the said cause described

[Goodman v. Winter.]

in this bill, be, and the same is hereby, reversed, set aside, and annulled, in so far only as the rights of this complainant are concerned."

On the trial of the ejectment suit, as the bills of exceptions show, the plaintiffs proved Clayton's ownership and possession of the land at the time of his death, his death in Geor gia as above stated, and the names and number of his children; and then offered in evidence a certified copy of the record of his will in the Orphans' Court of Montgomery county in June, 1841, above described. The defendant objected to its admission as evidence, because it was not the probate of the will, and because there was no law authorizing it to be recorded. The court overruled the objections, and admitted the transcript; to which rulings the defendant duly excepted. The plaintiffs then offered in evidence a certified transcript of the probate in Montgomery in 1846, above set out and described. The defendant objected to the admission of said transcript as evidence, "because, the proceeding set out being a special proceeding, the necessary jurisdictional fact nowhere appears—to-wit, that it touched or concerned some estate in Alabama"; and because the probate of the will in Georgia, as copied in the said transcript, did not show that the witnesses subscribed their names in the presence of the testator, as required to pass lands in Alabama; and because the proceeding purported only to give probate of a copy of a copy, and not to a copy of the original will; and because the probate did not give legal efficacy to the original will, or establish that the will was properly executed, attested, or probated in Georgia. The court overruled these several objections, and admitted the transcript; to which the defendant excepted. The plaintiffs then offered in evidence a certified copy of the survey and plat by Emmerson, and of the agreement of partition, both above described, taken from the records of the Probate Court of Montgomery, and duly certified. It was admitted, by written agreement, "that said copy be received in place of the original, if admissible." The defendant objected to the admission of Emmerson's survey and plat, "because it was not by law authorized to be recorded; and because there was no acknowledgment or probate of the same, no subscribing witness called, and no proof of its execution by Emmerson." The court overruled each of these objections, and admitted the survey as evidence; to which the defendant excepted. The defendant objected, also, "to that portion of the pretended deed of partition wherein the names of Clayton's heirs appear, and to the certificate of Washington, and to the whole transcript—1st, because the original

(27)

[Goodman v. Winter.]

should have been produced, and the execution thereof proved;
2d, that no law gave it the privilege of record ; 3d, that there
was no subscribing witness, and no acknowledgment or pro-
bate." The court overruled each of these objections, and ad-
mitted the paper as evidence ; to which rulings the defend-
ant excepted. The plaintiffs proved, also, Mrs. Holcombe's
marriage in 1840, and her death in 1867, and the names and
marriages of her children, &c., corresponding with the names
of the plaintiff's lessors in the suit; "also, that the several
children of said Clayton went into possession of the several
portions of said land respectively allotted to them, as shown
by the foregoing memorandum of partition ; that Mrs. Hol-
combe went into the possession of said lot No. 7, of which
the land in controversy is part, in 1843 ; and that they, and
those holding under them, have been in continuous posses-
sion, under said partition, up to this time,— said Winter
claiming to hold the land in controversy adversely to all the
world." The plaintiffs proved, also, the value of the rent of
the land, with and without the improvements, since the death
of Mrs. Holcombe ; and the defendant's possession, since
1859, was admitted.

The plaintiffs having closed, the defendant offered in evi-
dence the deed from Holcombe and wife to J. S. Winter,
above described, and the deed of said J. S. Winter to J. F.
Winter as trustee for the defendant ; and then offered in evi-
dence a certified transcript of the proceedings had in the
Chancery Court at Mobile, in the suit of J. S. Winter against
Holcombe, his wife, and children, above set out. In the
plaintiffs' bill of exceptions it is stated, that this transcript
was offered "for the purpose of barring all the lessors of
plaintiff from recovery by reason of said decree of February
14, 1860, and, second, to bar all said lessors except Georgia
Goodman ;" while the statement in the defendant's bill of ex-
ceptions is, that the transcript "was offered in support of a
special plea in bar, thereto attached, on the 3d June, 1873,
to which no replication was filed." (The special plea refer-
red to is not copied or noticed in the transcript, and the bill
of exceptions recites that the cause was tried on issue joined
on the plea of not guilty, with a suggestion of adverse pos-
session and the erection of valuable improvements). "The
plaintiffs objected to the admission of said transcript, on the
ground that said decree had been reversed at the instance of
Georgia Goodman, one of the defendants therein ; and ex-
hibited a transcript of the record, containing the bill of review
and proceedings therein, with the decree, showing that fact ;
and insisted that the same, setting out the case as it now
stands, should go to the jury, if admissible, in lieu of the

transcript offered by defendant. The defendant objected to the substitution, on the ground that, as to the matter set out in said transcript, which had occurred since the commencement of this suit, it was not admissible evidence in this action; and because Georgia Goodman was barred from maintaining this action by said original decree, and was not entitled to recover." The court sustained the plaintiff's objections to the first transcript, and overruled the defendant's objections to that offered as a substitute; excluding the transcript of the proceedings had under Winter's original bill, and admitting that which contained also the proceedings had under the bill of review. The defendant excepted to these rulings; and according to the plaintiffs' bill of exceptions, they also excepted to the admission of said transcript by the court, "as a bar to all the lessors except Georgia Goodman, but not as to her." It is further stated, in the plaintiffs' bill of exceptions, that the "Statute Laws of Georgia, by Hotchkiss," pages 455, 687 and 688, were read in evidence; but they are not copied in the transcript, and there is no agreement in reference to them. Evidence was also introduced in regard to the value of the improvements erected by the defendant, but it requires no special notice.

The court charged the jury, "That the decree of the Chancery Court of Mobile, rendered on the 14th February, 1860, under the bill filed by Joseph S. Winter against George G. Holcombe and others, is yet the decree of said court, and binding on all the parties thereto, except wherein the decree is annulled, set aside, and declared void; that the decree so rendered by the chancellor is annulled and set aside by the subsequent decree, so far only as it affects the rights or interest of Georgia Goodman; and that she is entitled to recover, subject to the defendant's rights in putting permanent improvements on the land while holding adversely." To this charge each party excepted; the plaintiffs, because it limited the right of recovery to Georgia Goodman; and the defendant, because it asserted a right of recovery by her. The court charged the jury, also, "that, if they believed the evidence, they must find for the plaintiff on the demise of Georgia Goodman, and for the defendant on the demise of the other lessors named"; to which charge, also, each party excepted as before.

The defendant requested the following charges, which were in writing: 1. "To find for Georgia Goodman, the jury must believe from the evidence, not only that the lands sued for were devised by the will of said George R. Clayton, but also that they were divided under the will, and not outside of the will, by the children of said Clayton, taking by descent;

and that, under said division, the lands in controversy were allotted to said Mildred Holcombe." 2. "If the jury believe the evidence in the cause, they will find for the defendant." 3. " It is incumbent on the plaintiff to show affirmatively, to the reasonable satisfaction of the jury, that the lands in controversy are part of the lands of which said Clayton died seized, and which he, by his last will and testament, of necessary legal execution and attestation, devised; and that the particular lands sued for in this action fell to Mildred Holcombe under a division of the lands devised by said Clayton, by the will produced; and that such division was made under, and not outside of, or in repugnance to, the provisions of said will; and if this be not affirmatively shown by the plaintiff, the jury will find for the defendant." 4. "If the jury believe, from the proofs in the cause, that said Clayton died in October, 1840 ; and that any right of Georgia Goodman's mother to the property in controversy was left unasserted, until after the deed of September, 1851, by Mildred and George G. Holcombe to said J. S. Winter, was executed ; and that in the meantime, before the execution of said deed, there was a division among the heirs at law of said Clayton, as heirs taking by descent,—the said Mildred Holcombe taking, under said division, the property here in controversy, as her divisional share of the lands in Alabama ; and that the possession of the property after the death of said Clayton up to September 1st, 1851, was the possession of said heirs first, and then of said Mildred Holcombe, holding and claiming as heirs, and not under the will of Clayton ; and that up to said 1st September, 1851, neither the mother of Georgia Goodman, nor any one for her, disputed in any way the possession of the said heirs, nor that of the said Mildred Holcombe, nor her title as heir taking by descent ; and that no action was in the meantime taken by the executors of said Clayton's will, to dispute the character of [the title] or possession of said Mildred, holding the property as before stated ; and that the said Winter bought and paid for the said property, as evidenced by said deed of 1st September, 1851 ; and that he paid his money in good faith, believing at the time that said Mildred held as heir at law, and that she could make a good title thereto ; then, the jury will be authorized to consider the case as one of adverse possession as against the remainder-men named in the will, and as against the said complainant's mother, if she was one of the number ; and if said possession of defendant, and those whose possession she has, has since been peaceable, they must find against the claims of said Georgia Goodman." The court refused each

[Goodman v. Winter.]

of these charges, and the defendant duly excepted to the re-
fusal of each.

Each party here assigns as error the several rulings of the
court below, to which exceptions were reserved, as above
stated. The opinion of this court was delivered in August,
1879, but the case has never been reported.

R. M. WILLIAMSON, for the plaintiffs below.—1. The sale
and conveyance by Holcombe and wife to Winter, in 1851,
passed only such interest in the land as Mrs. Holcombe then
owned, and did not destroy or affect the interest of the re-
mainder-men. Its only legal effect was, to make Winter ten-
ant in common with Clayton's other children, to the extent of
Mrs. Holcombe's life-estate. No relation of trust existed be-
tween Holcombe and wife and their children. The act of
Holcombe and wife in selling the property, so far as the in-
terest of their children was concerned, was the act of stran-
gers dealing with property which did not belong to them, and
over which they had no power. Such a sale can not be
made valid by any ratification or confirmation by a court of
equity, or any other tribunal. It does not occupy as high
ground as a sale of property by an officer of court, acting un-
der a misconstruction of his authority ; to which no validity
can be imparted by any subsequent decree of the court,
though it might have authorized the sale in the first instance.
*Gray v. Brignardillo*, 1 Wallace, 627 ; *Minnesota Co. v. St.
Paul Co.*, 2 Wallace, 609-40; *Shriver's Heirs v. Lynn*, 2 How-
ard, 59-60. There are two classes of cases, in which a court
of equity will ratify and sustain an act done without previous
authority : 1st, when one holding the legal title surrenders
the estate to the beneficial owner ; 2d, when a trustee, acting
in good faith, and exercising his best judgment, exceeds his
authority, but the *cestui que trust* is not thereby injured; in
which case, a court of equity will save the trustee harmless,
and compel the *cestui que trust* to make an election. In all
these cases, the jurisdiction is derived from the power of the
court over trustees and trust estates ; and no case can be
found, in which the unauthorized act was ratified, regardless
of the beneficiaries' right of election. The power of a court
of equity, over such transactions, is carefully and cautiously
exercised, and kept within the line of safe precedents ; for it
is well understood that, in these friendly suits, so called, the
only friendless party is he who is most vitally interested, and
who yet has no voice in the suit.

2. The Chancery Court at Mobile acquired no jurisdiction
over this property, so far as the remainder-men had an inter-
est in it, under the bill filed by Winter. They were then all

[Goodman v. Winter.]

minors, except Mrs. Pope, who was a married woman; their estate was strictly a legal estate: there were no trusts connected with it; and none of them were wards of the court. Unless the Chancery Court has power to order or decree a sale of the legal estate of married women and infants, for re-investment in other property—not at their instance, but at the instance of others in adverse interest—the proceeding is null and void, for want of jurisdiction of the subject-matter. There are cases in which, on the ground of necessity, the court will trench upon the principal, for the maintenance of infants or lunatics; but this requires an extreme case, and is done with fear and trembling.—*Greenwell v. Greenwell*, 5 Vesey, 194; *In re Bostwick*, 4 John. Ch. 100. The general principle is, that a court of equity has no power over legal estates—can not pass upon the title, or take charge of it for any purpose—except as incident to some trust or equity. A trustee can not maintain a bill in equity upon a legal title, which would support an action at law.—*Kimball v. Moody*, 27 Ala. 130. In England, the court has always refused to cut off the inheritance of an infant, on the ground of a supposed benefit to him.—1 Vesey, sr., 229; *Taylor v. Phillips*, 2 Vesey, sr., 23; 3 Atkins, 613; *Russell v. Russell*, 1 Molloy, 258-9. It has always refused to sell the real estate of an infant, or to change the investment of it; repudiating the power to do so, though it might appear to be for his benefit and advantage that it should be done.—*Calvert v. Godfrey*, 6 Beavan, 97; *Brookfield v. Bradley*, 1 Jac. 632; *Petro v. Gardner*, 2 Y. & Coll. 312; *Simpson v. Jones*, 2 R. & M. 365; Willard's Equity, 629; Tyler on Infancy and Coverture, 296. The American authorities are equally conclusive on the question.—*Windsor v. McVeigh*, 3 Otto, 274; *Dill v. Rogers*, 6 Hill, N. Y. 415; *Onderdonk v. Mott*, 34 Barbour, 106; *Baker v. Lorillard*, 4 Comstock, 266; *Watson v. Watson*, 3 Jones' Eq. N. C. 400; *Williamson v. Berry*, 8 Howard, 495; 495; Tiffany & Bullard on Trusts, 641. In this State, the question has not been directly presented; but the reasoning of the court in *Cresswell v. Crawford*, 55 Ala, 497, sustains the argument here made. The case of *Rivers v. Durr*, 46 Ala. 418, involved a trust estate, and the right to sell for partition; and the authority cited, 19 Vesey, 122, is against the conclusion of the court. That the legislative power alone is competent to dispose of an infant's real estate, see *Holman's Heirs v. Bank of Norfolk*, 12 Ala. 309; *Watkins v. Holman*, 16 Peters, 59; 3 L. C. in Eq. 269.

3. The testator's will was not before the Chancery Court which assumed to dispose of this property, but it is before this court; and it imposes peculiar and unusual restraints

[Goodman v. Winter.]

upon the alienation of the property during the continuance
of the life-estate.    These restraints are not violative of any
principle of law, and no court has any power to set them
aside.—*Petro v. Gardner*, 2 Y. & Coll. 311 ; *In re Turner*, 10
Barbour, 552 ; *Tuthill v. Mosely*, 45 Ala. 621.

4.  The probate of the will in Alabama, in 1846, was suffi-
cient, without reference to the defective probate in Georgia.
*Pope v. Pickett*, 51 Ala. 585.

5.  When a decree is set aside, or reversed, on writ of
error, appeal, or bill of review, it is entirely annulled.    A
judgment or decree is an entire thing, and it is either right or
wrong.    When ascertained and determined by the revising
tribunal, at the instance of a party who has a right to revise
it, to be wrong, it is set aside and annulled for all purposes.
*Moore & Keefe*, 10 Ohio, 362 ; *Wilkins v. Phillips*, 3 Ohio, 49;
*Massie v. Wallace*, 12 Ohio, 351 ; *Kennedy v. Duncan*, Hard.
Ky. 365.

WINTER & WINTER, for the defendant.—1. The jurisdiction
of the Chancery Court, as the general guardian of infants,
over their estates and persons, has existed so long, that its
origin is involved in obscurity ; but, whatever may be its ori-
gin, " it is now conceded on all sides to be firmly established,
and beyond the reach of controversy."—2 Story's Equity,
§§ 1328–34 ; *Preston v. Dunn*, 25 Ala. 507 ; which latter case
is approved by STONE J., in *Hunt's Heirs v. Ellison*, 32 Ala. ;
*Lee v. Lee*, 55 Ala. 590.    This jurisdiction involves the power
to change the nature of the infant's estate—to convert realty
into personalty, or personalty into realty ; and even to con-
sume the principal of the estate, when necessary for the main-
tenance or education of the infant.    This principle has been
recognized and exercised by this court, in *Ex parte Jewett*, 16
Ala. 410 ; *Rivers v. Durr*, 46 Ala. 418 ; and in *Crawford v.
Cresswell*, 55 Ala. 497, it was not repudiated, though the
decree rendered by the chancellor was, on direct appeal, held
erroneous.    This jurisdiction is founded on necessity, and is
always exercised with a view to the benefit and advantage of
the infant ; and sometimes, in an extreme case, in violation
of the instrument creating the estate, as in *Watts v. Steele*, 19
Ala. 656.    In other States of the Union, the same doctrine is
well established, and the English rule is repudiated, as being
inconsistent with our laws, institutions, and circumstances.
See *Huger v. Huger*, 3 Dess. S. C. 18 ; *Stapleton v. Vanderbilt,
Ib.* 22 ; *Smith v. Sackett*, 5 Gilm. ; *Lynch v. Rotan*, 39 Ill. 141;
*Grattan v. Grattan*, 18 Ill. 171 ; *Cowles v. Cowles*, 3 Gilm. 435;
*Downing v. Lesesne*, 35 Md. 474 ; *Kearn v. Vaughan*, 50 Mo.
284.    When the court has power to decree a sale in the first

[Goodman v. Winter.]

instance, it has equal power to give sanction and validity to a sale made without previous authority : it is but electing for the infant, where he has an undoubted right of election, and is incapable of exercising it.—*Boyce v. Pritchett*, 6 Dana, 233; 2 Story's Equity, § 1357.

2. The correctness of the chancellor's decree, under the bill filed by Winter, is not involved in this action. The Chancery Court is a court of superior, or general jurisdiction; and its decree in a cause brought regularly before it, relating to a subject-matter of which it has cognizance, all parties interested being present, can not be collaterally attacked.—*Voorhees v. U. S. Bank*, 10 Peters, 474; *United States v. Arredondo*, 6 Peters, 709; *Ex parte Watkins*, 3 Peters, 207; *Stevenson v. Bonsteel*, 30 Iowa, 286; *Clay v. Hoogland*, 6 Cal. 688; *Kemp v. Kennedy*, 5 Cranch, 185; 6 Cranch, 267; 8 Howard, 611; *Wyatt's Adm'r v. Rambo*, 29 Ala. 523; *Adams v. Jeffries*, 12 Ohio, 253; *Sheldon v. Newton*, 3 Ohio St. 494; *Ex parte Stickney*, 40 Ala. 168; *McNutt v. Turner*, 16 Wallace, 364; 77 Penn. 197; *Dorsey v. Kendall*, 8 Bush, Ky. 294; 8 B. Mon. 102; *McLean v. Martin*, 49 Mo. 362; 1 Woods, C. C. 279, 593; *Pulaski County v. Stuart*, 28 Grattan, Va. 872; *Grignon's Lessee v. Astor*, 2 Howard, 338; *Cornett v. Williams*, 20 Wallace, 249; *Thacker v. Chambers*, 5 Humph. 313; 5 Texas, 578; *Gelston v. Hoyt*, 1 John. Ch. 543; *Wesson v. Chamberlain*, 3 Comst. N. Y. 331. In all these cases, the distinction is drawn between want of jurisdiction, and mere error of judgment—between judgments which are void, and those which are merely voidable, or reversible on error or appeal; and it is important in this case to observe the distinction. See, also, Freeman on Judgments, § 118; McNamara on Nullities, 137.

3. The authorities cited for appellant, to the effect that a decree or judgment, reversed or annulled as to one of the parties, is reversed or annulled as to all, apply only to cases of joint tenancy, and proceed on the idea that the interests are incapable of division. Other authorities, again, take the other extreme, and hold all barred when one is barred. 7 Cranch, 156; *Robinson v. Smith*, Litt. Sel. Cases, 296; *Milner v. Davis, Ib.* 436; 7 B. Monroe, 236. But neither of these principles applies to the case of tenants in common, whose interests are held in severalty, and each must stand or fall on the merits of his own right.—*Morris v. Armstrong*, 10 Ohio, 12; *Bronson v. Adams*, 10 Ohio, 136; *Massey v. Matthews*, 12 Ohio, 353; *Wade v. Johnson*, 5 Humph. 117; *Jordan v. Thornton*, 7 Geo. 517; *Tabord v. Archer*, Bailey's Eq. S. C. 535; Angell on Limitations, § 484.

4. To enable the devisees in this case to recover, it was necessary for them to show that the will was executed,

[Goodman v, Winter.]

attested, and probated, according to the laws of Alabama. The probate in Georgia was not sufficient to pass the lands in Alabama, because it was not shown that the attesting witnesses signed their names in the presence of the testator, as required by the Alabama statute.   Recognizing this fact, the parties interested made a voluntary division of the lands in Alabama among themselves as heirs; and this is the only division shown to have been made at any time.   Several years afterwards, an attempt was made to admit to record an authenticated copy of the will, as probated in Georgia; and during this proceeding, to engraft upon it, or incorporate into it, a distinct proceeding to prove the original will, and thus supply the deficiencies of the Georgia probate.   This proceeding was strictly statutory, and can not be referred to the general jurisdiction of the court; and it fails to show an essential fact—namely, that the will concerned estates in Alabama.   Hence, it is void as an original probate of a foreign will; and for the further reason, that such . attempted original probate could not be incorporated into a special proceeding, such as was inaugurated, to admit to record an authenticated copy of the will and its foreign probate.   All the objections to evidence, made in the court below, are insisted on.

BRICKELL, C. J.—The devise and bequest in the will of George R. Clayton, to his children, of all his estate, real and personal, remaining after the payment of his debts, to be divided among them equally, each child accounting for advancements, created a tenancy in common; the daughters taking estates for life, with remainders to their children, which were subject to open and let in after-born children. This tenancy in common continued, until there was a partition, or division, which the will contemplated.  If, before such division, any of the daughters had died, her children, as remainder-men, would have become tenants in common with the surviving children of the testator.— *Chighizola v. LeBaron,* 21 Ala. 406; 1 Jarman on Wills, 117.   The fee simple passes by the devise—the entirety to the sons, an estate for life to the daughters, with remainder to their children.   Such would have been the construction and operation of the will at common law.   In this State, joint tenancy has been abolished, by statute enacted under the territorial government; and when such an estate may have been created, by proper words according to the common law, it is converted into a tenancy in common.   This statute would have controlled the operation and construction of the will, if it had created a joint tenancy, so far as it affects the lands here situate.   A division

of the estate the will contemplates, without a resort to judicial proceedings, by the act of the children; so that the share or portion each one is entitled to hold in severalty, can be ascertained and identified. The evidence of such division, and of the title of the children, which is to be preserved, the will prescribes. No deed of conveyance of any kind is required, to pass title to the children severally. By the operation of the devise, and by force of its terms, when a division is made, the share of each child is identified, and each is clothed with the legal title thereto in severalty.

2. At common law, the ecclesiastical courts had exclusive jurisdiction of the probate of wills of personal property, and probate was necessary to authorize a legatee to maintain a suit, at law or in equity, for the recovery of a gift to him. No other evidence of the existence and validity of the will could be received.—*Shepherd v. Nabors*, 6 Ala. 637. The sentence of probate, had in the proper tribunal of the domicile of the testator, was *in rem*, not *in personam*, and could not be collaterally assailed. In other countries, it operated as evidence, and was the foundation of an ancillary probate, when in such countries probate was indispensable to enable the legatee there to maintain suits.—*Moore v. Lewis*, 21 Ala. 580; *Wood v. Matthews*, 53 Ala. 1. Devises of real estate, independent of statutory enactment, did not need a formal probate, to entitle them to be received as evidence. Of them, the ecclesiastical courts had no jurisdiction, and their existence and validity could only be contested in ordinary actions at common law. The judgment in such actions was binding only on parties and privies. The jurisdiction of the ecclesiastical courts, in this country, has been translated to courts, though differing in organization, of the same general jurisdiction, and the sentences of these courts have the same legal operation and effect. In many of the States, the jurisdiction has been enlarged, and embraces not only wills of personal property, but devises of real estate, not distinguishing between them, and providing modes of contesting their validity. When jurisdiction is thus conferred, it is plenary and exclusive; and the sentence of probate, being *in rem*, is conclusive, in all other than a direct proceeding for its vacation or reversal; and is as indispensable as matter of evidence, to the force and effect of a devise, as to a bequest of personal property.—2 Green. Ev. 672; 1 Jarman on Wills, 215; *Shumway v. Holbrook*, 1 Pick. 114; *Kerr v. Moore*, 9 Wheat. 565; *McCormick v. Sullivant*, 10 Wheat. 192; *Johnson v. Glasscock*, 2 Ala. 218; *Tompkins v. Tompkins*, 1 Story, 547; *Poplin v. Hawks*, 8 N. H. 124; *Dublin v. Chadbourn*, 16 Mass. 433.

3. In the absence of statutory provisions, the sentence of pro-

[Goodman v. Winter.]

bate, in the proper tribunal of the domicile of the testator, is
conclusive everywhere, of the capacity of the testator, and of
the due execution and validity of a will of personal property.
No other tribunal, foreign or domestic, will indulge an inquiry
behind or beyond it. When the probate is to operate in an-
other jurisdiction, ancillary probate may be necessary; but
the only inquiry then made is as to the validity and due au-
thentication of the original probate. Ascertaining that to
have been granted by a court of competent jurisdiction, and
to be properly authenticated, ancillary probate is a matter of
right.—*Brock v. Frank*, 51 Ala. 85; *Williams v. Sanders*, 5
Cold. 60; Whar. Con. Laws, § 645; Redf. Wills, 394-98.

4. The statutes of force at the death of the testator, and con-
tinuing of force until the Code of 1852 became operative (on
the 17th January, 1853), conferred on the Orphans' Courts
exclusive jurisdiction of the probate of wills, not only of per-
sonal, but of real estate, making no distinction between them.
The validity of the will was the subject of contest in the Or-
phans' Court, at the time of probate; or, within five years
after the sentence of probate, by bill in chancery. In no
other mode could its validity be questioned; and after five
years, the original probate was binding and conclusive on all
parties concerned, except infants, *femmes covert, non compotes
mentis*, or persons absent from the State, who were allowed
a like period of five years, after the removal of disabilities,
to contest the validity of the will in equity.—Clay's Dig.
597-98. The operation of these statutes was, that probate of
a will was as necessary as evidence to give effect to a devise,
as it was at common law to give effect to a legacy, or a be-
quest of chattels, and the probate was as conclusive of the
validity of the will, so far as it devised real estate, as it was
so far as it disposed of personal property.

The statutes proceeded further, and authorized the probate
of authenticated copies of wills, proved according to the laws
of any of the United States, or of any country out of the
limits of the United States, touching or concerning estates
within this State; but its validity was subject to be contested
and controverted in the same manner as the original might
have been.—Clay's Dig. 598, § 12. In *Varner v. Bevil*, 17
Ala. 286, it was held, that probate of a foreign will, at the
domicile of the testator, was not essential to authorize probate
in this State, the testator having here real and personal
estate on which it operated; the statute not diminishing the
jurisdiction of our courts, but enlarging it, so that, not-
withstanding probate had been granted at the domicile of the
testator, the validity of the will could be controverted, when
probate was sought in our courts. The statute, in this re-

[Goodman v. Winter.]

spect, manifestly modified the general principle of law, applicable to the probate of wills of personal property, that the sentence of a tribunal of competent jurisdiction is binding and conclusive everywhere. The probate here was not merely ancillary, but original, having the force and effect, on personal and real property here situate, of a will made by a resident of this State.

5. The law of the domicile of the owner, whether he dies testate or intestate, controls the disposition or succession to his personal property. The descent, title to, and disposition of real estate, is subject exclusively to the laws of the country where it is situate. Whatever are the modes of alienation, or of devise, or the evidence of alienation or of devise, these laws may prescribe, as essential to ʼpass title, must be observed, without regard to the laws of the domicile of the owner, or of the place of making the alienation or devise. *Varner v. Bevil*, 17 Ala. 286; *Brock v. Frank*, 51 Ala. 85; *Kerr v. Moore*, 9 Wheat. 565. Hence, where a statute of the State where lands are situate requires that a will devising them, made in another State, shall be authenticated in a particular manner and recorded, or that probate shall be granted, an observance of these requisitions must be had, or the devise is inoperative for the want of the only evidence of its existence which can be received.—Wheat. Con. Laws, § 561; *Kerr v. Moore, supra; McCormick v. Sullivant*, 10 Wheat. 192; *Dublin v. Chadbourn*, 16 Mass. 433.

So far as the will of the testator "touched or concerned estate in this State," probate here was essential, as evidence of the title of the devisees. The mere registration in the County, or Orphans' Court, of an authenticated copy of the will, and its probate at the domicile of the testator, was not authorized. It could not operate as evidence of the title of the devisees, nor could it operate as notice of the existence of the will; nor had the probate judge any authority to certify such registration, to be used as an instrument of evidence in other tribunals.—*Doe v. Pickett*, 51 Ala. 584. In the admission of such copy, the Circuit Court erred. But the error was rendered harmless, by the subsequent introduction of the probate of the will in November, 1846.

6. The validity of the latter probate is assailed, because it is not shown by the record, that the will "touched or concerned estates" within this State. The Court of Probate, nor the former Orphans' Court, as to the granting of administration, or of letters testimentary, the latter including the probate of wills, is esteemed as a court of limited or statutory, but as a court of general jurisdiction. The probate is a sentence *in rem*, not *in personam ;* and it is final and conclu-

[*Goodman v. Winter.*]

sive upon all parties, unless it is directly impeached in the mode prescribed by the statute, or by a proper proceeding for its revocation in the court granting it. The objection now made is, not that the fact that the will *touched or concerned estates here* did not exist, but that the sentence is irregular in not reciting that fact. It would be a ruinous precedent, now that all disputation of the probate is cut off by the statute, to entertain such an objection in a collateral proceeding. *Herbert v. Hanrick*, 16 Ala. 581. In *Doe v. Pickett*, 51 Ala. 585, the sufficiency of this probate was directly involved, and it was pronounced valid. We adhere to that decision.

7. The lessors of the plaintiff deducing title in entirety to the premises, it was necessary for them to show that there had been a partition, or division, on which the premises had been allotted or assigned in severalty to their mother. That there was a partition in 1842, before probate of the will in this State, is not a disputed fact. "The interest of a devisee vests immediately on the death of the testator. No estate can or ought to intervene, between that of the testator and the devisee. Some period of time must elapse between the death of the testator and the probate, when probate is essential as evidence of the title of the devisee—of the due execution and validity of the will. Then, the probate has relation to the death of the testator, and is evidence of the title of the devisee vesting at that time.—3 Wash. Real Prop. 450. Where registration or probate of a foreign will is necessary according to the local laws, as evidence of the title of the devisee, the registration or probate has relation to the death of the testator, and the title is regarded as vesting from that period, and not from the registration or probate.—*Poole v. Fleeger*, 11 Pet. 211; *Spring v. Parkman*, 12 Maine, 127; *Hall v. Ashby*, 9 Ohio, 96. The probate operating only as evidence, not being the inception of the title of the devisees, without it they could make the partition or division the will contemplates and authorizes; and contemplates and authorizes simply for the purpose of identifying the particular property each child should hold in severalty. The title is derived from the will, not from the partition. When there was a subsequent probate of the will, the probate had relation to the testator's death, and furnished the necessary legal evidence of the title of the devisee. It did not operate to destroy the division which had been made, but simply furnished complete evidence of the several titles of the devisees.

8. It is not a matter of importance, that there is a recital in one part of the partition that it is among *the heirs* of the testator. In fact, there was no estate descending to the heirs to be divided, and the persons among and between

whom the partition was made were the devisees of the testator, deriving title wholly from the will. The recital is merely inadvertent,—an inaccurate expression of the relation of the parties, not uncommon with persons unskilfull in the use of language,—and cannot impair the rights of parties, or change the real character of the division. Whether the transcript of the partition, as recorded in the Court of Probate, was admissible in evidence, is not a question now to be considered, the parties having agreed such transcript should be received, if the original partition was admissible; and of its admissibility there can be no doubt.

9. As we have said, the will contemplates and authorizes a voluntary partition or division between the devisees; and when it is effected, title is not derived from it, but from the will. The partition or division simply designates the portion or share of the estate, real and personal, each devisee or legatee is entitled to hold in severalty under the will. The possession, with claim of exclusive title to the premises in controversy—exclusive, so far as the other devisees are concerned—by Mrs. Holcombe and those claiming under her, for more than twenty years, was sufficient evidence of a partition, or division, and of her title in severalty; title, not as heir at law, for none had descended to her, but title as devisee. The presumption that there had been a division or partition, and the premises had been assigned to her, would arise from the length of possession.—*McArthur v. Carrie*, 32 Ala. 75; *Harrison v. Heflin*, 54 Ala. 552. There was no fact shown, indicating any purpose on her part to take as heir at law; nor in that capacity could she take. Nor yet was there an indication of any purpose to claim in opposition to, or to affect the estate of the remainder-men. Whatever partition or division she assented to, accepted, and acted on, operated as a designation of the premises to which the remainder-men would succeed at her death; and by no act of hers, or of her co-tenants, could the remainder be destroyed, discontinued, or prevented from taking effect. The several charges requested, in reference to a division *outside of, or repugnant to the will,* and among the heirs at law, were properly refused. There was a want of evidence to support them, and no division among the heirs, if such had been made, could affect the rights of the devisees, whether tenants in fee simple, or for life, or in remainder.

10. The validity of the decree of the Court of Chancery, barring and enjoining the lessors of the plaintiff from asserting title to the premises in controversy, which was unreversed when the action was commenced, is the question of chief importance. That a judgment or decree of any court, whether

of superior or inferior jurisdiction, is void, if it has not juris-
diction of the subject-matter, or, if it operates *in personam*, if
it has not jurisdiction of the parties, is a proposition every
where asserted, and cannot be doubted. Without jurisdiction
of the subject-matter, or of the parties, the acts of the court
are nullities—they are not merely *voidable*, but absolutely
*void*. They form no bar, create no estoppel, afford no justi-
fication to parties or privies. Whether assailed directly or
collaterally, the question of jurisdiction is always open. Any
court before which the judgment or decree is produced,
whether as matter of evidence, as the foundation of a right,
or as a bar, can and must inquire whether it is a judgment or
decree—whether it was pronounced by a court of competent
jurisdiction.—*Elliott v. Piersol*, 1 Pet. 340.

The Court of Chancery is a superior, not an inferior court,
as these terms are employed at common law. Its jurisdiction
is founded upon, and co-extensive with that of courts of
chancery in England, so far as is consistent with our institu-
tions, and so far as it is distinguished from the jurisdiction of
the courts of common law. The jurisdiction is enlarged or
narrowed by legislative enactments; but, whether it is the
original, inherent jurisdiction, derived from that of the court
in England, or from statute, it is exercised and administered
in the modes which were pursued in England, modified, it
may be, in some instances, by legislative enactments.— *Wal-
dron v. Simmons*, 28 Ala. Rep. 629. The general principle,
as to courts of superior or general jurisdiction, is, that the
jurisdiction shall be intended, unless it is repelled by the
record. As every judgment or decree must stand or fall upon
the power and authority of the tribunal pronouncing it, the
first inquiry, when its validity is drawn in question, is,
whether jurisdiction appears, or can be presumed. In *United
States v. Arredondo*, 6 Pet. 709, it is said : "The power to
hear and determine a cause is jurisdiction : it is *coram judice*,
whenever a case is presented which brings this power into
action : if the petitioner states such a case in his petition,
that, on demurrer, the court would render judgment in his
favor, it is an undoubted case of jurisdiction." The court
would be then bound to hear and determine, and its judg-
ment, however erroneous, would bind parties and privies—
would be conclusive of the right established, and could be im-
peached only in an appellate tribunal.

Though it is an undoubted case of jurisdiction, if, on
demurrer, the court would render judgment in favor of the
actor; it is also a case of undoubted jurisdiction, though the
complaint, petition, or bill, or other pleading of the actor, is
demurrable, if the court has power and authority to decide

on its sufficiency. The power to decide upon the cause of action, as presented by the pleadings, is jurisdiction, like the power to decide any other legal proposition which the case may involve.—Freeman on Judgments, § 118. In *King v. Kent*, 29 Ala. 542, the Orphans' Court, having jurisdiction to order a sale of lands of a decedent, had granted an order on a petition wholly insufficient in averment of jurisdictional facts, if a demurrer or a motion to dismiss had been interposed; but the decree being collaterally assailed, every reasonable intendment was made in support of it, and all questions of pleading regarded as conclusively adjudicated. And in the subsequent case of *Wright v. Ware*, 50 Ala. 557, considering the same question, it was said: "All questions of pleading, which the court had the right to decide, are conclusively adjudicated, and whether correctly or not is not the subject of inquiry." A court, having jurisdiction to decide whether the case presented by the pleading, in the mode prescribed by the constitution and the practice of the court, falls within its jurisdiction, may err in its judgment; but the judgment is not void: it is merely erroneous, and is conclusive until reversed or vacated. If an action of ejectment, or a real action, were instituted in the Court of Chancery; or an indictment, or information for crime, were preferred; the case would be *coram non judice,* and the decree pronounced void. Or, if, in the mode of pleading at common law, any cause of action cognizable exclusively at law was presented, the decree of the court would be void. But, if, by appropriate pleading, a case was presented, of which the court would have jurisdiction, if there was not an adequate remedy at law, the error of the court in adjudging that it had jurisdiction, though the bill disclosed the adequacy of legal remedies, and was demurrable, would not render the decree void. Nor would a decree be void, relieving against a judgment at law, because the bill disclosed there was no fraud, accident, or surprise, which prevented the complainant from making defense at law; or which showed that the defense had been made, and was unsuccessful. It would be erroneous, and reversible, but binding and conclusive until it was reversed. A court, having jurisdiction to decide the case as presented, does not avoid its judgment, by deciding erroneously that it belongs to a class in which relief ought to be granted.

"The line which separates error in judgment from the usurpation of power, is very definite, and is precisely that which denotes where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so."—*Voor-*

[Goodman v. Winter.]

*hees v. U. S. Bank*, 10 Pet. 474. Where a court of superior
or of general jurisdiction is presented with a case of such
character that, before rendering a final decree or judgment, it
must determine whether it has jurisdiction to pass such judg-
ment or decree as is invoked, and it is passed, collaterally
the jurisdiction can not be assailed, nor the validity of the
judgment or decree be drawn in question. The court has
power, and is bound to hear and determine, and the case is *co-
ram judice.—Deguindre v. Williams*, 31 Ind. 456 ; *Shroyer v.
Richmond*, 16 Ohio St. 455 ; *Cox v. Thomas*, 9 Grat. 312.

11. The original and amended bills disclosed that the tenant
for life, supposing herself clothed with the power, had .sold
and conveyed the premises in fee to Winter, for their full
value ; that the purchase-money had been invested by the
life-tenant in the purchase of other property, title to which
had been made to a trustee, to hold for her life, with remain-
der on her death to her surviving children ; that the property
had been purchased as a homestead for the life-tenant and
her children, the remainder-men, and was of greater value,
and a more suitable and profitable investment, than the
premises sold and conveyed by the life-tenant. The insolv-
ency of the life-tenant and of her husband, and their conse-
quent inability to make good their covenants of warranty, if
Winter was evicted by the remainder-men, is also averred.
The prayer of the bill is, that the remainder be cut off, and
the remainder-men barred from asserting it against Winter,
the purchaser, and they compelled to accept the remainder
in the lots purchased by the life-tenant, and conveyed as
aforesaid, in full satisfaction of the remainder in the premises
now in controversy ; or, if that relief could not be granted,
that the lots so purchased by the life-tenant be charged as a
security for the payment of the money paid her by Winter,
and the contract of purchase rescinded ; and for general relief.
On this bill, the Court of Chancery, having jurisdiction of all
parties in interest, rendered the decree barring and enjoining
the lessors of the plaintiff from asserting their estate in
remainder.

It is not necessary, and it is ·no part of our province or
purpose now, to vindicate the correctness of this decree. It
may be erroneous, and it may be that, on demurrer, or motion
to dismiss for want of equity, the chancellor should have dis-
missed the bill. These were questions he had jurisdiction to
decide ; and if he erred, the law appoints the mode of correct-
ing the error. Until the decree is reversed, it is binding and
conclusive, if the case, as presented by the bill, was of such a
character that the court was bound to hear and determine
whether it had jurisdiction to grant relief. There are many

facts and circumstances, under which a purchaser. of the fee simple from the tenant of the particular estate would have an equity to compel the remainder-men to convey to him the estate in remainder, or a right to a decree barring and enjoining them from asserting against him the estate in remainder. The alienation of the estate by the tenant for life passed merely the particular estate—the estate with which she was invested, and of which she had the power of disposition. It has no legal operation on the estate in remainder, neither discontinuing nor defeating it, though it may by its terms purport to convey the fee-simple, and was intended to pass it. But, if the remainder-men were adults, and accepted a part of the purchase-money as compensation for the estate in remainder, they would, in a court of equity, be estopped from asserting their legal estate, and the court would compel them to convey to the purchaser, or bar them from asserting the legal estate against him. The acceptance of a part of the purchase-money, as compensation for the remainder, would be a ratification and adoption of the unauthorized alienation and conveyance. So, if the tenant for life should invest the purchase-money in the purchase of other property, taking a conveyance to herself for life, with an estate to the remainder-men; and they, with full knowledge of all the facts, should accept the conveyance; the purchaser would have an undoubted equity to call for a conveyance of the estate in remainder. It is a plain principle of justice, of right, and of law, that a man can not accept the benefits, and reject the burdens of a transaction. Upon this principle, the books abound with cases in which those who are entitled to avoid a sale, or to adopt and ratify it, or to claim under or in opposition to a conveyance, by accepting the proceeds of the sale, or the benefits of the conveyance, preclude themselves from avoiding it.—2 Smith's Lead. Cases, 742. The sale or conveyance may be of personal property, title to which will pass by parol; the estoppel will prevail in courts of law. But, if it is of lands, title to which, in courts of law, can pass only by writing, the estoppel will not prevail, and can not be enforced, elsewhere than in equity.—*McPherson v. Walters*, 16 Ala. 714; *Walker v. Murphy*, 34 Ala. 591.

12. While this may be true of adults, it is insisted that a court of equity, being without jurisdiction to decree a sale of the lands of an infant, is without jurisdiction to ratify or confirm an unauthorized sale of his lands by a guardian or a trustee, or by a stranger intruding himself into the relation of either; and that no estoppel can be raised against them. Whatever may be the doctrine prevailing in the Court of Chancery in England, or whatever contrariety of opinion, or

[Goodman v. Winter.]

of doubt, may prevail in the different States ,as to the juris-
diction of a court of equity to decree a sale of the real estate
of an infant; in this State, the jurisdiction must be regarded
as existing.—*Ex parte Jewett*, 16 Ala. 410; *Rivers v. Durr*, 46
Ala. 418. The jurisdiction does not spring from, nor is it
dependent upon, the character of the estate,—whether abso-
lute or contingent; whether in possession, or the possession
postponed until the happening of a future event. It rests
upon the power and duty of the court to protect infants,—to
take care of, and preserve their estates, while under disability
debarring them from the administration of property. The
courts would be more reluctant to decree the sale of an estate
in remainder, or of a contingent estate, lest it might operate
a sacrifice of the interests of the infant; but the jurisdiction
exists, though it may be more seldom and more sparingly
exercised. It may be, the infant has no other source from
which maintenance and education can be derived. Or, it
may be, the estate is deteriorating in value, without fault or
neglect on the part of the tenant of the particular or prior
estate, and that the deterioration will continue, so that, when
the preceding estate expires, it will be, if not valueless, of
greatly less value than when the court is requested to order
a sale. A sale is then necessary, for the maintenance and
education, or to conserve the interests of the infant, and it
has been the practice of Courts of Chancery in this State to
decree it.

The case of *Crawford v. Cresswell*, 55 Ala. 497, does not, as
is insisted by counsel for the appellant, cast any doubt on the
existence of the jurisdiction. The case was before the court
on appeal from the decree of the chancellor, ordering a differ-
ent investment of trust funds from that which the will direct-
ed. The decree was not collaterally drawn in question.
Whether the chancellor's decree would, in any event, be sus-
tained on appeal, was not decided; but it was held, the
power ought not to be exercised (and in that case was im-
properly exercised), unless it was shown by clear, precise
averment of facts, supported by convincing evidence, that a
necessity existed for a conversion of the funds, and that the
conversion would not prejudice the remainder-men.

The reasons controlling the English Court of Chancery, for
repudiating jurisdiction. to decree a sale of an infant's real
estate, seem to have been, that on the death of the infant,
the course of descent might have been interrupted; and if
converted into personal property, he could, during minority,
bequeath it. The first reason could never have been of force
in this State, as the same persons who would take real estate
by descent, as heirs, would take personal property, as next of

kin under the statute of distribution. Each reason subordinates the necessity and interest of the infant while living to that of those who would succeed to the estate on his death ; while, with us, the court looks only to the care, protection, and advantage of the infant.—2 Perry on Trusts, § 605. In England, real estate may be of fixed and certain value, and the better investment for infants, or other persons resting under disability. The courts here are admonished that real estate is fluctuating in value, and often in some kinds of personal property investments are of more certain value, yielding a larger and more reliable income. There seems no substantial reason for distinguishing, here, between the power of the court to decree a sale of real and of personal property ; and in practice none has been recognized.

The tenant for life was the mother of the remainder-men, and the sale and conveyance was made by her and her husband, the father, the natural guardian of the remainder-men. When it is manifestly for the benefit of an infant, courts of equity will permit trustees and guardians to change the character of his property ; and if without the authority of the court the change is made, the court will sanction and confirm it, if under the circumstances it would have decreed the change.—*Inwood v. Twine*, Ambler, 419 ; *Bronfield, Ex parte,* 1 Vesey, jr., 453 ; *Snowhill v. Snowhill*, 2 Green's Ch. 22. Neither the tenants for life, nor the father, stood in the legal relation of trustees, or of guardians of the estate of the remainder-men. Yet it can not be doubted that, on attaining majority, the remainder-men could have elected to accept the investment made by the life-tenant, and to have adopted the conveyance she had taken. Nor can it be doubted that, on the expiration of the particular estate under the will, and under the conveyance, each expiring on the happening of the same event, they could have asserted a lien upon the premises conveyed, for the purchase-money received from Winter, if they preferred it, to asserting the estate in remainder in the premises in controversy.—*Broome v. Curry,* 19 Ala. 806. The wrongful alienation by the tenant for life, while incapable of operating to their injury, clothed them with these several distinct, conflicting rights. If they accepted the investment made by the life tenant, or claimed a lien on the premises conveyed, for the purchase-money the life tenant had received and invested, the wrongful alienation was ratified and confirmed. During infancy, the remainder-men were thus clothed with inconsistent and conflicting rights, between which they were incapable of electing, and yet having the right of electing when they attained majority. While an infant can not

make an election, a court of equity has undoubted jurisdiction to elect for him.—1 Lead. Cases Eq. (Part 2) 1169.

It is also true, that an infant may not create an estoppel; yet, under circumstances, the benefits of a particular transaction may have been so appropriated for his advantage, that he will not be heard to gainsay it. A sale of lands, descending to him, may have been made under an order of court void for want of jurisdiction; the purchaser can not repudiate his contract to pay the purchase-money, unless the infant is brought before a court of equity, and an election made for him whether the sale shall be confirmed or repudiated.—*Lamkin v. Reese*, 7 Ala. 170; *Bland v. Bowie*, 53 Ala. 153; *McCully v. Chapman*, 58 Ala. 325; *Merritt v. Horne*, 5 Ohio St. 307. No adult, infant, lunatic, or married woman, can be permitted to receive, hold, and enjoy the proceeds of a sale of property, whether the sale is by an order of a court irregular and void, or by the wrongful act of an individual, without being estopped from a repudiation of the sale. In *Commonwealth v. Sherman*, 18 Penn. St. 346, it is said: "Equitable estoppels of this character apply to infants, as well as adults; to insolvent trustees and guardians, as well as persons acting for themselves; and have place, as well when the proceeds received arise from a sale by authority of law, as where they spring from the act of the party." Of course, it must appear that the sale is for the benefit of the infant, or the court would not prevent him from asserting his title, though it would protect the purchaser by decreeing him a lien or trust for the repayment of such sums as had been applied to the benefit of the infant.

Notwithstanding the infancy of the remainder-men, there are grounds on which the court of equity had jurisdiction to interfere, and pronounce the decree rendered. Whether the case presented was of the class in which relief should be granted—whether facts were pleaded and proved justifying relief—were inquiries the court was bound to make, and decide. However erroneous may be the decree—however mistaken may be the judgment of the court—however irregular may have been the course of proceeding—until reversed, the decree is binding and conclusive.

14. The action of ejectment is a possessory action. A plaintiff, pursuing it, can not recover, unless at the commencement of the action he had a legal title, entitling him to immediate possession. Title and right of possession, acquired after the commencement of the action, will not authorize a recovery.—Tyler on Ejectment, 76; *Alden v. Grove*, 18 Penn. St. 377; *McCool v. Smith*, 1 Black (U. S.), 459. The rule is of very general application, that facts not occurring until after

the commencement of an action, essential to support the plaintiff's recovery, will not support the action.—*Donaldson v. Waters*, 30 Ala. 175. Insufficiency or defects of evidence, then existing, may be supplied, as in *Ridgway v. Glover*, 60 Ala. 187; but the right, and the facts necessary to support it, must exist when the action is commenced. The decree of the Court of Chancery, barring and enjoining the lessors of the plaintiff from asserting the estate in remainder, was of full force and unreversed, when the action was commenced. The plaintiff was then without a legal title to, and without the right of immediate possession of the premises. The reversal of that decree was essential to restore his lessors to the legal title, and the right of possession. A reversal, subsequent to the institution of the suit, could not, by relation, authorize them to recover in an action prematurely commenced.

As this view is decisive of the case, it is unnecessary to consider any other question presented by the record. The judgment on the appeal taken by Lydia H. Pope and others, No. 287, must be affirmed; and on the appeal taken by Winter and others, No. 288, the judgment is reversed, and the cause is remanded.